J-A29045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS GOVAN, JR. | : | |
| | : | |
| Appellant | : | No. 704 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 15, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005778-2018

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: FEBRUARY 22, 2021**

Appellant, Curtis Govan, Jr., appeals from the aggregate judgment of sentence of 16 to 40 years of confinement followed by five years of probation, which was imposed after his jury trial convictions for rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI") by forcible compulsion, aggravated indecent assault ("AIA") by forcible compulsion, terroristic threats with intent to terrorize another, unlawful restraint -- holds another in a condition of involuntary servitude, simple assault, resisting arrest or other law enforcement, and public drunkenness and similar misconduct.[1] We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3125(a)(2), 2706(a)(1), 2902(a)(2), 2701(a)(1), 5104, and 5505, respectively.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case. *See* Trial Court Opinion, dated July 6, 2020, at 3-8. Therefore, we have no reason to restate them at length here.

For convenience of the reader, we briefly note that, in the early hours of October 6, 2018, Appellant -- who was unknown to the victim -- followed her home from a restaurant-saloon on Second Street in Harrisburg, jumped her as she attempted to enter her residence, beat her and dragged her to the ground, raped her vaginally and anally with his penis, and penetrated her anally with his fingers. *Id.* at 3, 6-7, 15 (citations to the record omitted). Roger Corigliano was walking home on Second Street when he heard the victim screaming and called 911; when police arrived, Appellant refused to stop assaulting the victim and lied that she was his girlfriend. *Id.* at 3-5 (citations to the record omitted). After multiple requests by police to step away from the victim, Appellant finally did, and the victim immediately told police that she had been raped. *Id.* at 5, 8 (citations to the record omitted). Appellant then fought with the officers, requiring one officer to deploy his Taser on Appellant, and three officers were needed to handcuff him. *Id.* at 5 (citations to the record omitted). The victim was brought to Harrisburg Hospital, where she asked for her boyfriend to come and be with her before giving a recorded statement to police. *Id.* (citations to the record omitted).

"A jury trial was held before th[e trial c]ourt from July 22 through 24, 2019[.]" *Id.* at 2. At trial, defense counsel implied in her opening statement

that the victim was lying about the fact that she did not know Appellant, who had been at the same restaurant-saloon as her on the night of the assault, because she was afraid of her boyfriend. N.T., 7/22/2019, at 75-76. Defense counsel also cross-examined the victim about whether she knew Appellant, whether she was afraid of her boyfriend, and why she wanted her boyfriend at the hospital before she gave a statement to police. N.T., 7/23/2019, at 144-54. During the testimony of an officer who responded to the 911 call, the Commonwealth played the recorded statement that the victim had given to police at the hospital on the night of the attack, Commonwealth Exhibit 79, over Appellant's objection. N.T., 7/23/2019, at 183, 186.

Immediately before closing arguments, Appellant "respectfully request[ed] a drop count of indecent, the misdemeanor[.]" N.T., 7/24/2019, at 421. At first, Appellant did not state of what charge indecent assault should be considered a lesser-included count. *See id.* When the trial court answered that Appellant was already charged with AIA, Appellant added, "The only, I guess arguable drop count that I could see would be just strictly the rape, if Your Honor was inclined to do a drop count, I would say attempted rape[2] versus indecent assault." *Id.* at 421-22. The trial court denied Appellant's request, explaining: "[The court] gave [Appellant] the opportunity to correct

---

2 We note that Appellant was never charged with "attempted" rape, only with the completed crime.

- 3 -

the verdict slip, the only thing that was corrected, I think was one matter, so no drop counts were requested, so I'm gonna deny [the] request." *Id.* at 422.

Following his convictions for the aforementioned crimes, "[s]entencing was deferred for an evidence-based pre-sentence investigation, as well as an evaluation by the Sexual Offenders Assessment Board[.]" Trial Court Opinion, dated July 6, 2020, at 2. On October 15, 2019, the trial court sentenced Appellant to consecutive terms of seven to twenty years of confinement for rape, seven to fifteen years of confinement for IDSI, and two to five years of confinement followed by five years of probation for AIA; he received no further penalty on the remaining counts.

> At the time of sentencing, the offense gravity score ("OGS") for the charges of Rape and IDSI was 12. Based on the OGS of 12 and prior record score of zero, the standard range for Counts 1 (Rape) and 2 (IDSI) were forty-eight (48) to sixty-six (66) months, and seventy-eight (78) months aggravated. . . . [T]he sentences at Counts 1 and 2 are six (6) months above the aggravated sentencing guideline.

Trial Court Opinion, dated July 6, 2020, at 18.

Appellant, who was represented by counsel, filed a *pro se* notice of appeal on November 14, 2019. The trial court did not send the notice to this Court; instead, it forwarded it to counsel pursuant to Pa.R.Crim.P. 576.

> As hybrid representation is not permitted in the Commonwealth, our courts "will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." *Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa.Super. 2016) (citation omitted).
>
> However, when a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity and has legal effect. *Commonwealth v. Cooper*, 611 Pa. 437, 27 A.3d 994, 1007

(2011). While a defendant does not have a right to hybrid representation, "there is a right of appeal pursuant to Article 5, § 9 of the Pennsylvania Constitution." **Williams**, 151 A.3d at 624 (citing **Commonwealth v. Ellis**, 534 Pa. 176, 626 A.2d 1137 (1993)). "Because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief." **Williams**, 51 A.3d at 624.

**Commonwealth v. Hopkins**, 228 A.3d 577, 580–81 (Pa. Super. 2020).

Accordingly, Appellant's *pro se* notice of appeal should have been deemed timely and given legal effect, but it was never entered with this Court.

On December 10, 2019, Appellant, *pro se*, filed a petition filed under the Post Conviction Relief Act ("PCRA"),[3] contending that his trial counsel was ineffective for failing to "file any post-trial motions, or a notice of appeal as [Appellant] requested." PCRA Petition, 12/10/2019, at 4. After the PCRA court appointed counsel, a joint stipulation was filed on March 10, 2020, stating: "The Commonwealth and counsel for [Appellant] agree that [Appellant]'s post-sentencing and direct appeal rights should be reinstated and that [PCRA counsel] should remain as [Appellant]'s counsel to perfect [Appellant]'s direct appeal." Joint Stipulation as to Reinstatement of Appellate Rights, 3/10/2020, at ¶ 6. On March 12, 2020, the trial court entered an order that Appellant's "direct appellate rights are **REINSTATED**." Order, 3/12/2020 (emphasis in original). On March 16, 2020, Appellant's counsel filed a post-sentence motion for modification of sentence, which the trial court

---

[3] 42 Pa.C.S. §§ 9541–9546.

denied on April 27, 2020. Counsel filed a timely notice of appeal on May 8, 2020.[4]

Appellant presents the following issues for our review:

A. Whether the trial [c]ourt erred in denying the Appellant's *Nunc Pro Tunc* Post-Sentence Motion for Modification where the record is devoid of legitimate reasons to support the sentence he received which were outside and above the aggravated range of the sentencing guidelines for both the Rape and IDSI offenses; and trial court further improperly imposed the sentence outside the aggravated range of the sentencing guidelines without noting the sentencing guidelines and without providing an adequate explanation on the record.

B. Whether the trial [c]ourt erred in failing to merge the [AIA] sentence with either the rape or the [IDSI] counts in violation [of] 42 Pa.C.S. § 9765.

C. Whether the trial [c]ourt erred by admitting into evidence, over trial counsel's objection, as a prior consistent statement[,] a recorded audio statement, Commonwealth Exhibit 79, of [the victim] when there had been no assertion of recent fabrication or of any new corrupt motive by Appellant's trial counsel.

D. Whether the trial [c]ourt erred by not allowing for the jury to consider, and by not charging the jury with, the lesser charge of indecent assault as requested by trial counsel.

Appellant's Brief at 3 (suggested answers omitted).

Appellant first challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-part analysis to determine: (1) whether appellant has filed a

---

[4] The notice of appeal states that the appeal "stem[s] from the denial of the *Nunc Pro Tunc* Motion to Modify Sentence on the 27th day of April 2020[,]" but the appeal properly lies from the judgment of sentence imposed on October 15, 2019. Appellant filed his statement of errors complained of on appeal on May 18, 2020. The trial court entered its opinion on July 6, 2020.

timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa. Super. 2018) (quotation marks and some citations omitted), *reargument denied* (July 7, 2018). In the current case, Appellant filed a timely notice of appeal, preserved his issue in a post-sentence motion, and included a statement in his brief pursuant to Pa.R.A.P. 2119(f) ("Rule 2119(f) Statement"). Appellant's Brief at 15-19. The final requirement, whether the question raised by Appellant is a substantial question meriting our discretionary review, "must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Manivannan***, 186 A.3d at 489 (quotation marks and some citations omitted).

In his Rule 2119(f) Statement, Appellant alleges that several substantial questions exist, thereby compelling appellate review. First, he asserts that, when the trial court imposed his sentence, it failed to discuss the sentencing guidelines or to explain why "the Rape and IDSI counts justified a sentence above the aggravated range." Appellant's Brief at 18. A claim that a trial

court failed to state its reasons for deviating from the guidelines and for imposing a sentence at or above the aggravated range presents a substantial question for review. *Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009); *Commonwealth v. Fullin*, 892 A.2d 589, 592-93 (Pa. Super. 2005).

Additionally, Appellant contends that the trial court failed to consider his rehabilitative needs and the need for protection of the public. Appellant's Brief at 18. Section 9721(b) requires the sentencing court to "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." Appellant's arguments about his rehabilitative needs and protection of the public therefore raise substantial questions. *See Commonwealth v. Buterbaugh,* 91 A.3d 1247, 1266 (Pa. Super. 2014) (*en banc*) ("[a]rguments that the sentencing court failed to consider the factors proffered in 42 Pa.C.S. § 9721 does present a substantial question" (citation omitted)).

Finally, Appellant maintains that the trial court's imposition of an excessive sentence while failing to consider the presence of mitigating circumstances also raises a substantial question. Appellant's Brief at 18. "[A] substantial question exists when the defendant asserts both a claim of excessiveness and the trial court's failure to take mitigating circumstances

into account." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 n.38 (Pa. Super. 2015); ***see also Commonwealth v. Mulkin***, 228 A.3d 913, 916 (Pa. Super. 2020) (allegation that sentencing court ignored mitigating evidence when imposing an aggravated range sentence raises substantial question). Accordingly, Appellant's assertion that the trial court imposed an allegedly excessive sentence above the aggravated range without considering mitigating factors likewise raises a substantial question.

Having found Appellant's sentencing challenges merit our discretionary review, we turn to our standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Lekka***, 210 A.3d 343, 350 (Pa. Super. 2019) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William T. Tully, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question. ***See*** Trial Court Opinion, dated July 6, 2020, at 16–20 (finding: the trial court did not err by sentencing Appellant above the aggravated range for rape and IDSI; the facts of this case were "disturbing" and a "random crime" that

- 9 -

"everybody" "fears"; at the time of sentencing, the trial court noted on the record that it was "sympathetic to [Appellant]'s past, and . . . glad that [he is] amenable to treatment that is necessary" and would "take into consideration rehabilitative needs" (quoting N.T., 10/15/2019, at 19-23); the trial court added six months above the aggravated range for the sentences for rape and IDSI in lieu of sentencing Appellant to additional consecutive penalties for terrorist threats, unlawful restraint, simple assault, resisting arrest, and public drunkenness).

Next, Appellant argues that "[t]he trial court erred in not merging the [AIA] sentence with the Rape/IDSI Counts . . . in violation 42 Pa.C.S.A. § 9765." Appellant's Brief at 27-28.

A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence." **Commonwealth v. Leaner**, 202 A.3d 749, 784 (Pa. Super.), *appeal denied*, 216 A.3d 226 (Pa. 2019). "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." **Lekka**, 210 A.3d at 355 (citation omitted).

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

Again, after a thorough review of the record, we conclude that the trial court did not err by not merging the convictions for purposes of sentencing,

because the evidence established that each of the crimes charged was a separate and distinct act. Appellant committed rape when he penetrated the victim vaginally with his penis. Trial Court Opinion, dated July 6, 2020, at 7. He committed IDSI when he penetrated the victim anally with his penis. *Id.* He committed AIA when he penetrated the victim anally with his fingers. *Id.* at 15. Thus, the charges of rape, IDSI, and AIA were not a "single criminal act" as required by Section 9765 for merger of sentences, and Appellant's second issue merits no relief.

Appellant next contends that "[t]he trial court erred in admitting into evidence as a prior consistent statement a recorded statement given by [the victim] . . . to the police at Harrisburg Hospital on the same day as the alleged incident." Appellant's Brief at 33.

"The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion." ***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citation omitted).

> Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose[.]

Pa.R.E. 613(c)(1).

- 11 -

During opening statements and cross-examination, defense counsel challenged the victim's credibility, alleging that she was lying about knowing Appellant, because she was afraid of her boyfriend. N.T., 7/22/2019, at 75-76; N.T., 7/23/2019, at 144-54. The victim's prior consistent statement, made on the night of the incident and therefore before any charge of fabrication arose, thus was properly admitted to rebut said implied charge of fabrication and to rehabilitate her credibility pursuant to Pa.R.E. 613(c)(1). Accordingly, Appellant's third challenge merits no relief.

Finally, Appellant alleges that "[t]he trial court erred not charging the jury of the lesser and included offense of indecent assault[,]" because the victim "was less than clear concerning the Rape/IDSI[.]" Appellant's Brief at 36-37.

"[O]ur standard of review when considering the denial of jury instructions is one of deference — an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted).

Appellant broached the subject of a lesser-included charge immediately before closing argument. N.T., 7/24/2019, at 421. However, Appellant had been given the verdict slip – which did not include indecent assault -- earlier in the trial, but failed to request the addition of this lesser-included charge at that time. *Id.* at 422. Failure to object to a particular verdict sheet constitutes

waiver of its use. ***Commonwealth v. duPont***, 730 A.2d 970, 984-85 (Pa. Super. 1999); ***see also Commonwealth v. Houck***, 102 A.3d 443, 451 (Pa. Super. 2014) ("the failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue"). By failing to raise the issue of a lesser-included offense at the time that he was given the verdict sheet, Appellant has waived any claim that the jury should have been instructed on such a charge.

We further note that, at trial, Appellant never requested a jury charge on indecent assault as a lesser-included offense of IDSI, only as lesser-included offense of rape. N.T., 7/24/2019, at 422. Accordingly, his argument in his brief that an instruction on indecent assault should have been given as a lesser-included offense of IDSI is being raised for the first time on appeal. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Consequently, Appellant's claim that a charge should have been given for indecent assault as a lesser-included offense of IDSI is waived for this reason as well.[5]

---

[5] Consequently, we need not reach the question of whether indecent assault would properly be considered a lesser-included offense of rape given the facts of this case. ***See, e.g.***, ***Commonwealth v. Lomax***, 8 A.3d 1264, 1268 (Pa. Super. 2010) (where appellant's commission of section 3121(c) rape of a child and section 3121(a)(7) indecent assault were both based on the same act of penetration, these convictions merged); ***Commonwealth v. Baraniak***, 504 A.2d 931, 934 (Pa. Super. 1986) ("indecent assault which merges with, and is a lesser included offense of, attempted rape").

For the reasons set forth above, we affirm, partially on the basis of the trial court's opinion. The parties are instructed to attach the opinion of the trial court in any filings referencing this Court's decision.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/22/2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | : | DAUPHIN COUNTY, PENNSYLVANIA |
| v. | : | |
| | : | NO. 704 MDA 2020 |
| | : | |
| CURTIS GOVAN, JR., | : | TRIAL COURT NO. |
| Defendant/Appellant | : | CP-22-CR-0005778-2018 |

## OPINION
### [Pursuant to Pa.R.A.P. 1925(a)]

Presently before the Superior Court of Pennsylvania is the appeal of Curtis Govan, Jr. (hereinafter "Defendant" or "Appellant") from the judgment of sentence imposed on October 15, 2019, as made final by the denial of his *Nunc Pro Tunc* Post-Sentence Motion on April 27, 2020.

## PROCEDURAL HISTORY

On October 6, 2018, Defendant was charged as follows: (1) Rape Forcible Compulsion[1]; (2) Involuntary Deviate Sexual Intercourse ("IDSI") Forcible Compulsion[2]; (3) Aggravated Indecent Assault – Forcible Compulsion[3]; (4) Terroristic Threats with Intent to Terrorize[4]; (5) Unlawful Restrain/Involuntary Servitude[5]; (6) Simple Assault[6]; (7) Resisting Arrest[7]; (8) Criminal Mischief – Damage Property[8]; and (9) Public

---

[1] 18 Pa.C.S.A. § 3121(a)(1).
[2] 18 Pa.C.S.A. § 3123(a)(1).
[3] 18 Pa.C.S.A. § 3125(a)(2).
[4] 18 Pa.C.S.A. § 2706(a)(1).
[5] 18 Pa.C.S.A. § 2902(a)(2).
[6] 18 Pa.C.S.A. § 2701(a)(1).
[7] 18 Pa.C.S.A. § 5104.
[8] 18 Pa.C.S.A. § 3304(a)(5).



Drunkenness[9]. A jury trial was held before this Court from July 22 through 24, 2019, wherein Defendant was found guilty of all charges. Sentencing was deferred for an evidence-based pre-sentence investigation, as well as an evaluation by the Sexual Offenders Assessment Board ("SOAB").

Sentencing was held on October 15, 2019. Defendant was sentenced to an aggregate term of sixteen (16) to thirty-five (35) years of incarceration at a state correctional institution, followed by five (5) years of county probation. On November 14, 2019, Defendant filed a *pro se* Notice of Appeal and Motion for Ineffective Counsel. Those motions were forwarded to his counsel of record, Ashley Martin, Esquire, pursuant to Pennsylvania Rule of Criminal Procedure 576(a)(4) (filing and service by parties). On December 10, 2019, Defendant filed a *pro se* Petition for Post Conviction Collateral Relief. This court appointed Christopher Wilson, Esquire, as PCRA counsel.

On March 10, 2020, the parties filed a Joint Stipulation as to Reinstatement of Appellate Rights based on the fact that the *pro se* notice of appeal filed on November 14, 2019 was sent to previous counsel of record who did not preserve his appellate rights. Based on the joint stipulation, this Court issued an Order on March 12, 2020, reinstating Defendant's post-sentence and direct appeal rights. Defendant filed a *Nunc Pro Tunc* Post Sentencing Motion on March 16, 2020, which was subsequently denied by this Court on April 27, 2020. Defendant filed a timely Notice of Appeal on May 8, 2020. This Court directed Defendant to file a Concise Statement of Matters Complained of on Appeal ("Statement"). Defendant filed his Statement on May 18, 2020.

---

[9] 18 Pa.C.S.A. § 5505.

**Appellant's Statement of Errors Complained of on Appel**

On appeal, Appellant raises the following issues:

1. The trial Court erred by admitting into evidence, over trial counsel's objection, as a prior consistent statement a recorded audio statement, Commonwealth Exhibit 79, of A.S. when there had been no assertion of fabrication or of any corrupt motive by trial counsel. Instead, the evidence was cumulative, improperly buttressed, and merely corroborated the testimony of A.S. (citation omitted).

2. The trial Court erred by not allowing for the jury to consider, and by not charging the jury with, the lesser charge of indecent assault as requested by trial counsel. The trial Court granted trial counsel an exception to this denied request. (argument and citation omitted).

3. The trial Court erred in failing to merge the aggravated indecent assault sentence with either the rape or the involuntary deviate sexual intercourse counts in violation of 42 Pa.C.S.A. § 9765. (argument omitted)

4. The trial Court erred in denying the Appellant's *Nunc Pro Tunc* Post-Sentence Motion for Modification where the record is devoid of legitimate reasons to support the sentence he received which were outside and above the aggravated range of the sentencing guidelines for both the rape and involuntary deviate sexual intercourse offenses. The trial court improperly imposed the sentence outside the guidelines without providing an adequate explanation on the record. (citation omitted). Further, the Court erred in imposing its sentence by not referring to the Appellant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. (citation omitted).

(Appellant's Concise Statement of Matters Complained of on Appeal, filed May 18, 2020).

## FACTUAL BACKGROUND

On October 6, 2018, Roger Corigliano (hereinafter "Mr. Corigliano") was walking home on Second Street in the City of Harrisburg around 2:13 A.M. (Notes of Testimony, Trial, 7/23/19 ("N.T. Trial Vol. 2") at 88). In the area of Second and Union Streets, Mr.

Corigliano noticed a purse and a piece clothing on the ground and heard noises coming from the area. (N.T. Trial Vol. 2 at 88-89). He described the noises as "a female voice screaming in absolute terror and panic." (N.T. Trial Vol. 2 at 89). Mr. Corigliano believed the noises to be coming from inside a residence; therefore, he called 911 and provided dispatch with an address that he believed the noises were coming from, and stated that he heard a woman yell "rape".[10] (N.T. Trial Vol. 2 at 91, 93).

Officers Erik Henry (hereinafter "Officer Henry") and Duane Pyles (hereinafter "Officer Pyles") of the City of Harrisburg Police Department responded to the 911 call. (N.T. Trial Vol. 2 at 166). They arrived within less than a minute after being dispatched. (Id.) Upon arriving at the address provided by Mr. Corigliano, Officer Henry noticed a purse and red shirt laying in the alleyway. (N.T. Trial Vol. 2 at 169). He found it to be odd and when he looked further down the alleyway, he noticed two (2) earrings and a trail of property going to the rear of the residence. (N.T. Trial Vol. 2 at 170). As Officer Henry walked toward the rear of the residence, he heard a woman crying. (N.T. Trial Vol. 2 at 171). There was no light in the rear of the residence at all and it was very dark. (Id.)

Officer Henry walked around two (2) parked cars and was able to see Defendant and the victim underneath the fire escape. (N.T. Trial Vol. 2 at 172). He testified that he observed:

> [T]he victim … she was up against the white mattress, like her head in front of her body facing it, and then [Defendant] was right behind her, basically had her between himself and the mattress. Both of them had their pants down and it appeared they were having sex. There was motions of, like, thrusting like they were having sex.
>
> [The victim] did not look like she was a willing participate [sic] of this. She was crying. I was able to see her

---

[10] The 911 call was admitted into evidence and played for the jury. See Commonwealth Exhibit 1.

face because it was turned. She obviously was upset, was crying. I asked them what's going on. [Defendant] stated that they were just making out.

Due to everything – and even if you got rid of everything, all the property laying, we responded to something like this, we're still gonna separate them and make sure that everyone is – wants to be involved with this. So I asked [Defendant] to step away from her, and he refused to do that. He started kissing the side of her neck, the side of her face, just kept saying that they're just making out.

Eventually after a few more attempts, commands of him to step away from her, he did. He got about five feet away from her. She yelled out that she was being raped.

(N.T. Trial Vol. 2 at 175). Officer Henry then ordered Defendant to the ground, which he refused. (N.T. Trial Vol. 2 at 176). After several attempts and commands, Defendant still refused to get on the ground; therefore, Officer Henry drew his taser and eventually deployed the taser on Defendant. (Id.) Officers Henry and Pyles attempted to handcuff Defendant behind the back but were unsuccessful because Defendant refused to show his hands and was moving around a lot. (N.T. Trial Vol. 2 at 176-77). A few minutes later, another officer arrived on scene and it took three (3) officers to handcuff Defendant in the front. (N.T. Trial Vol. 2 at 177).

After Defendant was detained, Officer Henry went to speak to the victim. He described her as "[v]ery upset, shaken up, very emotional." (N.T. Trial Vol. 2 at 181). Officer Henry eventually transported the victim to the hospital and took a recorded statement from her. (N.T. Trial Vol. 2 at 182-83). The victim asked for her boyfriend to be with her while she provided the statement. (N.T. Trial Vol. 2 at 187). Officer Henry allowed it but explained that her boyfriend had to sit there and could not say anything, just let the victim tell him what happened. (Id.) Officer Henry stayed in the room the entire

time to ensure the victim and her boyfriend did not talk about the incident until after the statement was taken. (Id.)

The victim testified that her boyfriend dropped her off at Bourbon Street bar at approximately 10:00 P.M. and he went to work at Tom Sawyer's bar – approximately a block away. (N.T. Trial Vol. 2 at 103). Around 11:00 P.M., the victim left Bourbon Street and went to Tom Sawyer's with her friend. (N.T. Trial Vol. 2 at 108, 110). She stayed at Tom Sawyer's with her friend, as well as her brother who was also at Tom Sawyer's. (N.T. Trial Vol. 2 at 109). Approximately two (2) hours later, her brother got into a fight and was kicked out – she and her friend left as well. (N.T. Trial Vol. 2 at 110). The trio walked down to sit outside of Pita Pit while the victim's friend waited for a ride. (N.T. Trial Vol. 2 at 111). The victim stated that she had to use the bathroom and wanted to change her clothes before meeting up with her boyfriend when he got off work. (Id.) Her brother stayed with her friend, and the victim began walking home. (Id.) At the time, the victim lived at 917 North Second Street, so her route was straight down Second Street. (Id.)

While walking home, the victim was texting her boyfriend. (N.T. Trial Vol. 2 at 112). She stated that she noticed the Defendant, wearing a red t-shirt, walking behind her at some point, but he sped up and walked around her while walking across an intersection. (N.T. Trial Vol. 2 at 113). She felt the behavior was a little weird, but did not pay much attention to him. (Id.) After Defendant walked around her, she lost sight of him because she continued texting with her boyfriend. (N.T. Trial Vol. 2 at 114). When she arrived at her residence, she walked to the front door (which is on Second Street) and realized that she did not have keys with her. (N.T. Trial Vol. 2 at 112-14).

The victim went to walk around the back of the residence to a back staircase that leads her to a back door when:

I notice [Defendant] standing there and immediately I knew something was wrong. His shirt was off. So I started to back up and then that's when he had grabbed me. You know, I started screaming and I hear someone across the street yelling for him to let go of me. I am still screaming and he starts hitting me.

I ended up on the ground. He was dragging me. He ended up smashing my phone. I tried to give him – I told him that, you know, he could have my purse, I didn't care. Like, I just wanted him to stop. And he didn't care about my purse. He kept hitting me and dragging me.

At one point I was able to get up, kind of, as he was, like, dragging me back into the alleyway. And then he took me, like, around the corner. … And, um, that's, you know, where he, um, tried to have intercourse with me vaginally. He couldn't though. It wasn't working for him. So then he tried to do it anally.

He was still hitting me during this time. I noticed my lip was busted because I could taste, like, blood in my mouth. He was hitting me in the back of my head. I had told him not to do any of that because, my son, I had a son.

That's – he continued – he continued and that's when we saw flashlights. And at the time I didn't know who it was. I didn't know it was the officers came up and asked what we were doing back there. And he said, I'm just kissing with my girl – kissing my girlfriend, and he whispered to me to act like I was his girlfriend and we were just back there making out.

You know, I'm trying to hold my breath because, again, I didn't know it was a cop and trying to, like, stop crying. I couldn't, but I was still crying back there. I was trying to hold my breath so he wouldn't hit me because he had threatened to kill me, too.

And he – he – the officer at the time – again, I didn't know that's what it was – asked him to step out, and he kept repeating that we were – I was his girlfriend, we were just back there making out. And then he asked him to get on the

ground, and when I realized it was an officer, that's when I had said that he raped me. And I, like, broke down.

(N.T. Trial Vol. 2 at 115-17).

## DISCUSSION

### A. THE COURT DID NOT ERR BY ADMITTING THE PRIOR CONSISTENT STATEMENT OF THE VICTIM INTO EVIDENCE.

Appellant argues that this Court erred by permitting the Commonwealth to introduce the victim's prior consistent recorded statement from the night of the incident. Specifically, he asserts that the prior consistent recorded statement was cumulative and merely corroborated her testimony at trial. On the night of the incident, Officer Henry transported the victim to the hospital, and stayed with her the entire time until she provided a recorded statement. Officer Henry did allow the victim's boyfriend to be present in the hospital room. However, he specifically directed that the victim and her boyfriend not to discuss the events that transpired until after the statement was given. Officer Henry stayed with the victim and her boyfriend to ensure that did not occur.

Evidence of a prior consistent statement of a witness is admissible to rehabilitate the witness's credibility "if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of … fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose." Pa.R.E. 613(c)(1).

In her opening remarks, defense counsel implied that the victim was lying about the fact that she did not know Appellant, that she provided different version of events, and that she had a motive to lie because she was afraid of her boyfriend. Specifically:

DEFENSE COUNSEL: The complaining witness in this case … testified under oath at the first hearing in this case that she frequently goes to Bourbon Street Salon. Yet, she tells police that she's never seen [Defendant] before, doesn't know him.

She tells police also that she's out with her brother and two friends that night, but she **gives a couple different accounts** of how she gets separated from her brother and her friends that night, or maybe why she doesn't wait for her bouncer boyfriend to walk her home, who was at Sawyer's.

\* \* \* \*

Then the police find her and [Defendant] at her house, behind her house under a fire escape in an alcove up against mattresses at 2 o'clock in the morning in Downtown Harrisburg, and they've both been out drinking. As His Honor said, you are the judges of credibility as to **what is consensual or what is the result of fear of getting in trouble or being seen a bad way by your boyfriend or your family, right?**

(Notes of Testimony, Trial, 7/22/19 ("N.T. Trial Vol. 1") at 75-76 (emphasis added).

Additionally, defense counsel questioned the victim about her boyfriend being present when she provided the recorded statement to police, and being present at trial during her testimony:

Q: Okay. And your boyfriend is in the room right now, correct?

A: Yes.

Q: And he was in the room earlier when you testified?

A: Yes

Q: He was also in the room when you gave a statement at the hospital, correct?

A: Yes.

Q: At the time of October 6, 2018, you were not living with your boyfriend, right?

A:   No.

(N.T. Trial Vol. 2 at 144-45). Additionally, the victim is questioned about her decision to walk home alone that evening:

Q:   And then you get to Sawyer's, do you actually see your boyfriend?

A:   Yes.

Q:   Do you talk to him about what your plans are for the evening?

A:   Yes.

Q:   Did you discuss him maybe walking you home?

A:   No.

Q:   Why not?

A:   Because he was working.

Q:   Okay. And when he's working – the bars close at 2 – approximately when does he get off?

A:   He says there between an hour and – I mean, a half an hour and an hour for cleanup

(N.T. Trial Vol. 2 at 147-48).

Q:   Did you have a discussion about – with your brother about you walking home alone?

A:   Yes. He had asked me to stay but I told him I had to pee.

Q:   And did you have a discussion with Sam, your friend, about you walking home alone?

A:   Yes.

Q:   And, ultimately, it's your testimony that you end up walking home?

A:   Yes.

(N.T. Trial Vol. 2 at 153). The victim was further questioned about her testimony that she did not see Appellant following her down Second Street or see him walk down the alleyway next to her residence. (N.T. Trial Vol. 2 at 153-54). She was also questioned about the injuries she sustained and whether she told the police or a SAFE nurse certain details. (N.T. Trial Vol. 2 at 155-56).

Based on the opening statement of defense counsel and cross-examination of the witness, the Commonwealth sought to introduce the victim's prior consistent recorded statement into evidence through Officer Henry. Specifically, the Commonwealth asserted that the recorded statement is a prompt complaint that goes to her statement about what occurred to her, as well the defense implying that the victim fabricated the whole situation. (N.T. Trial Vol. 2 at 183). Defense counsel objected on the basis that the prior consistent statement was cumulative and merely corroborated the victim's testimony. (N.T. Trial Vol. 2 at 185). This Court overruled defense counsel's objection and permitted the Commonwealth to introduce and play the prior consistent recorded statement for the jury. (N.T. Trial Vol. 2 at 186, 188).

Since defense counsel expressly charged the victim with fabrication and improper motive as to what occurred that evening, it is permissible under Pa.R.E. 613(c)(1) to rehabilitate the credibility of the victim as a witness by admitting her prior consistent statement. "In a prosecution for rape, fresh complaints made by the alleged victim, consistent with her testimony at trial, benefit from a special evidential rule that makes evidence thereof admissible in the Commonwealth's case in chief." Commonwealth v. Freeman, 441 A.2d 1327, 1332 (Pa. Super. 1982) (overruling risk on other grounds). "[I]n the special circumstances of a rape case the testimony of a woman that she was raped

is automatically vulnerable to attack by the defendant as recent fabrication in the absence of hue and cry on her part. This justifies a special evidential rule permitting introduction of her fresh complaints in the prosecution's case in chief." Id. Such evidence is admissible to show a "prompt complaint" of the alleged crimes and is competent evidence to establish that a complaint was made and the details of what occurred. Id. at 1331.

Accordingly, this Court did not err by admitting the prior consistent recorded statement of the victim into the record.

B. THIS COURT DID NOT ERR BY NOT CHARGING THE JURY WITH THE LESSER INCLUDED OFFENSE OF INDECENT ASSAULT.

Next, Appellant asserts that the Court erred by not instructing the jury on the lesser-included offense of indecent assault. The Court notes that the request was made after the close of the evidence immediately before closing arguments, and the charge of the Court. Both counsel previously had the opportunity to review the verdict slip and request changes. No such request was made at that time. (Notes of Testimony, Trial 7/24/19 ("N.T. Trial Vol. 3") at 422).

"In deciding whether a trial court erred in refusing to give a jury instruction, we must determine whether the court abused its discretion or committed an error of law." Commonwealth v. Phillips, 946 A.2d 103, 110 (Pa. Super. 2008) (internal citations omitted). There is no requirement that the trial court must instruct the jury pursuant to every request made. Id. However, "[a] defendant is entitled to a charge on the lesser-included offense only where the offense has been made an issue in the case **and the evidence would reasonably support such a verdict**." Id. (emphasis in the original). Similarly, "[a] defendant is entitled to such an instruction only where the evidence in the record would permit the jury to find, rationally, the defendant guilty of the lesser included

Page **12** of 21

offense but not the greater offense." <u>Commonwealth v. Thomas</u>, 546 A.2d 116, 118 (Pa. Super. 1988) (internal citations omitted).

It is not completely clear from the record as to what charge defense counsel was requesting the "drop count" of indecent assault. (N.T. Trial Vol. 3 at 421). This Court assumed that defense counsel was requesting indecent assault as a lesser-included offense of aggravated indecent assault. The Superior Court in <u>Commonwealth v. Allen</u>, 856 A.2d 1251 (Pa. Super. 2004) was tasked with determining whether indecent assault is a lesser-included offense of aggravated indecent assault. The <u>Allen</u> Court found that it is not. Specifically, they noted:

> Aggravated indecent assault includes an element that is not required to commit indecent assault. That element is penetration of the genitals or anus of the victim. Indecent assault includes an element that is not required to commit aggravated indecent assault. That element is proof of arousing or gratifying sexual desire.
>
> Since each crime has an additional element not included in the other crime, neither is a lesser-included offense of the other.

<u>Allen</u>, 856 A.2d at 1253-54. Additionally, the evidence presented at trial would not rationally permit a jury to find Appellant guilty of indecent assault and not guilty of aggravated indecent assault. Therefore, this Court did not err in denying Appellant's request a jury charge for a "drop count" of indecent assault.

## C. THE COURT DID NOT ERR BY NOT MERGING THE CONVICTIONS FOR PURPOSES OF SENTENCING

Next, Appellant is challenging the legality of the sentence. Specifically, he asserts that this Court erred by failing to merge the Aggravated Indecent Assault conviction with either the Rape or IDSI conviction in violation of 42 Pa.C.S.A. § 9765. Section 9765 reads

"[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S.A. § 9765. However, "the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." Commonwealth v. Anderson, 650 A.2d 20 (Pa. 1994).

The offense of Rape is defined as "when a person engages in sexual intercourse with a complainant by forcible compulsion." 18 Pa.C.S.A. § 3121(a). "Sexual intercourse" "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101 (definitions).

The offense of IDSI is defined as "when the person engages in deviate sexual intercourse with a complainant by forcible compulsion." 18 Pa.C.S.A. § 3123(a)(1). "Deviate sexual intercourse" is defined as:

> Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement purposes.

18 Pa.C.S.A. § 3101 (definitions).

The offense of Aggravated Indecent Assault is defined as "a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if the person does so by forcible compulsion." 18 Pa.C.S.A. § 3125(a)(2).

"Forcible compulsion" is defined as:

> Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse.

18 Pa.C.S.A. § 3101 (definitions).

In the instant case, the Commonwealth charged, and the evidence proved, that each of the crimes charge was a separate and distinct act. The complaint filed by the Commonwealth enumerates that the elements of Rape was satisfied when Appellant penetrated the victim vaginally with his penis against her will. (N.T. Trial Vol. 2 at 128-29). No other allegation of sexual intercourse was listed for the charge of Rpae. The elements of IDSI were satisfied when Appellant penetrated the victim's anus with his penis against her will. (N.T. Trial Vol. 2 at 129). No other allegation of penetration was listed for the charge of IDSI. The elements of Aggravated Indecent Assault were satisfied when Appellant penetrated the victim's anus with his fingers. (Id.) No other allegation of penetration was listed for the charge of Aggravated Indecent Assault.

Since each charge was a separate and distinct act, the crimes do not merge for sentencing purposes. See Commonwealth v. Leatherby, 116 A.3d 73 (Pa. Super. 2015) (finding that sentences for indecent assault and corruption of minors did not merge where the defendant committed the separate acts of fondling the victims' breasts and rubbing the victims' buttocks); Commonwealth v. Jenkins, 96 A.3d 1055 (Pa. Super. 2014) (finding that the sentences for simple assault and robbery did not merge where the defendant committed the separate acts of punching the victim and then taking the victim's wallet); Commonwealth v. Robinson, 931 A.2d 15 (Pa. Super. 2007) (finding that sentences for

indecent assault and corruption of minors did not merge where the defendant committed the separate acts of touching the victim's breast and her vagina). Therefore, this Court did not err by not merging the sentence for Aggravated Indecent Assault with Rape or IDSI.

D. <u>THE COURT DID NOT ERR BY SENTENCING APPELLANT ABOVE THE AGGRAVATED RANGE FOR RAPE AND IDSI.</u>

Lastly, Appellant is challenging the discretionary aspects of sentencing. Specifically, he asserts that this Court erred by not providing an adequate explanation for sentencing outside the guidelines, as well as not referring to Appellant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation.

Challenges to the discretionary aspects of a sentence do not entitle an appellant to review as of right. 42 Pa.C.S.A. § 9781(b). An appellant must invoke the appellate court's jurisdiction by satisfying a four-part analysis: (1) whether Appellant filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether Appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. <u>Commonwealth v. Patterson</u>, 180 A.3d 1217, 1232 (Pa. Super. 2018). A substantial question is raised when an appellant "advances a colorable argument that the sentencing judge's action were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." <u>Id.</u>

In the instant matter, Appellant has filed a timely notice of appeal and has properly preserved the issue in a motion to modify sentence. However, Appellant has failed to set forth a substantial question that the sentence imposed by this Court is not appropriate

under the Sentencing Code or is contrary to the fundamental norms of the sentencing process.

When imposing a sentence, the court shall consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Additionally, "[t]he court shall consider the sentencing guidelines in determining the appropriate sentence for offenders convicted of, or pleading guilty or nolo contendre to, felonies and misdemeanors." 204 Pa.Code § 303.1. "Ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor does not raise a substantial question." Commonwealth v. Swope, 123 A.3d 333, 339 (Pa. Super. 2015) citing Commonwealth v. Berry, 785 A.2d 994, 996-97 (Pa. Super. 2001). Further,

> In every case where the court imposes a sentence … outside the guidelines adopted by the Pennsylvania Commission on Sentencing … the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. However, this requirement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence."

Commonwealth v. Antidormi, 84 A.3d 736, 760 (Pa. Super. 2014) (internal citations and quotations omitted). Additionally,

> Where pre-sentence reports exist, [appellate courts] shall … presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself.

Id. at 761.

At the time of sentencing, the offense gravity score ("OGS") for the charges of Rape and IDSI was 12. Based on the OGS of 12 and prior record score of zero, the standard range for Counts 1 (Rape) and 2 (IDSI) were forty-eight (48) to sixty-six (66) months, and seventy-eight (78) months aggravated. The Court had the benefit of an evidence-based pre-sentence investigation (a/k/a risk assessment), an assessment by the Sexual Offenders Assessment Board ("SOAB"), and a report by Mike Keefer with Dauphin County Mental Health Pretrial Services submitted by Appellant. Accordingly, this Court was aware of the Appellant's age, prior criminal record, personal characteristics and potential for rehabilitation (these factors were specifically documented in the evidence-based risk assessment which was prepared by Dauphin County Adult Probation).

The Court first notes that the sentences at Counts 1 and 2 are six (6) months above the aggravated sentencing guideline. Additionally, the Court placed the following on the record at the time of sentencing as its reasons for going above the sentencing guidelines:

> THE COURT: ... The facts of this case as it came in were disturbing. It was like something out of a television movie with a random crime. I think that's what fears everybody.
>
> We look at crime in the news and we always think, well, somehow the victim of the crime put themselves in that situation and we insulate ourselves from the impact because, oh, somehow something was done wrong on the other side. But in this case, there was nothing to indicate that. This was somebody, no different than perhaps my daughters enjoying the festivities downtown being on those streets, and then being singled out for events that were life-changing. And there's no other way of describing that.
>
> So as much as I'm sympathetic to your past, and I'm glad that you're amenable to treatment that is necessary, I think there is some complex issues that are beyond my capability. I accept the SOAB report, based upon the fact that

there was insufficient evidence to establish the criteria necessary for what I'll call the diagnosis of sexually violent predator. But I can't ignore that on that day, it was sexual,, it was violent, and you were a predator.

I'm looking at the different charges and the guidelines, and the DA'a quite right that many of those counts, if not all the counts, don't merge, and they all could stand on their own. But it's not my job to stack up a ton of charges and just put consecutive sentences.

Instead, I'm looking at the less serious offenses and looking at what was involved, including the terroristic threats, the threat to kill, all those things were … the things that kind of aggravated the three primary charges here. And those are the lead counts of rape, involuntarily deviate sexual intercourse, and aggravated indecent assault. So in all candor, I'm only planning on imposing sentences at those three counts, but considering all those other aspects of it, as far as seeing where it falls within the range of standard or aggravated sentences.

I have to agree with the Commonwealth that they all stand on their own. Sometimes they can kind of merge together. But **each one as described by the victim in her testimony was a separate degrading, vicious, painful act.** And that's why they have to stand on their own.

So I'm trying to structure the sentence – obviously, we have to take into consideration rehabilitative needs. …

* * * *

The other part, got to be very candid, when I was listening to the testimony, and I couldn't put it out of my mind, was what would have happened to this lady if that gentleman didn't persevere in calling 911 and the police didn't respond almost immediately to the site? … It was like listening to a horror movie.

So I'm stating it, but that's not what's controlling here, I'm saying it because I want you to understand that your actions can have dramatic effect on people that go beyond what you might anticipate. …

> So for all those reasons, the guidelines, the presentence report, as well as SOAB, as well as the effective arguments on both sides … it's going to be sentences of one, two, and three and because I'm using the other counts in factoring those three, I don't intend to impose any additional sentences other than those three.

(Notes of Testimony, Sentencing 10/15/19 at 19-23). Appellant was sentenced as follows:

- Count 1 (rape) – 7 ½ - 20 years incarceration

- Count 2 (IDSI) – 7 ½ - 15 years incarceration, consecutive to Count 1

- Count 3 (aggravated indecent assault) – 2 – 5 years of incarceration with 5 years consecutive probation, consecutive to Counts 1 and 2

- Count 4 (terroristic threats) – no further sentence

- Count 5 (unlawful restraint) – no further sentence

- Count 6 (simple assault) – no further sentence

- Count 7 (resisting arrest) – no further sentence

- Count 8 (criminal mischief) – no further sentence

Accordingly, by going six (6) months above the aggravated range, in lieu of adding additional consecutive sentences at Counts Four (4) through Eight (8), this Court believes that it placed adequate reasons on the record for sentencing above the guidelines for Counts 1 and 2. Therefore, this Court did not err in denying Appellant's *nunc pro tunc* post-sentence motion for modification of sentence.

**CONCLUSION**

Based on the foregoing, we respectfully request the Superior Court of Pennsylvania to affirm the judgment of sentence imposed on October 15, 2019, as made final by the denial of his *nunc pro tunc* post-sentence motion on April 27, 2020, and dismiss the appeal in this matter.

Date: __7-6-2020__     **Respectfully submitted:**



        **William T. Tully, J.**

DISTRIBUTION: 7/7/2020 @ 8:19 am
Ryan Lysaght, Esquire – District Attorney's Office *IO*
Christopher Wilson, Esquire, 2215 Forest Hills Dr., Suite 37, Harrisburg, PA 17112 *mail*
Superior Court of Pennsylvania, Prothonotary *mail*
Court Administration *IO*
Chambers of the Honorable William T. Tully *file copy*