J-S32035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD EUGENE RAKER | : | |
| | : | |
| Appellant | : | No. 609 MDA 2022 |

Appeal from the PCRA Order Entered April 1, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0006711-2016

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: NOVEMBER 8, 2022**

Richard Eugene Raker appeals from the order,[1] entered in the Court of Common Pleas of Dauphin County, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Upon careful review, we affirm in part, vacate in part, and remand for further proceedings.

Raker was convicted by a jury of aggravated indecent assault and related charges stemming from an incident in which he fondled and digitally penetrated his friend's intellectually-challenged 15-year-old daughter.  On December 10, 2020, the trial court sentenced Raker to an aggregate term of

---

[1] Raker's notice of appeal states that the instant appeal is from the April 1, 2022 order denying his post-sentence motion.  However, an order dated April 1, 2022, denying PCRA relief, is attached to the docketing statement filed by counsel.  Thus, it appears that the notice of appeal's reference to the denial of post-sentence motions is a typographical error, which we have corrected. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (correcting appeal's caption when appellant misstates where appeal lies).

three to six years' incarceration, followed by three years of probation. Raker obtained new counsel and filed a post-sentence motion for a new trial, in which he raised four claims of trial counsel's ineffectiveness. Raker acknowledged that, pursuant to **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), ineffectiveness claims are generally deferred until collateral review. However, he asserted that he had no other issues to raise on direct appeal, and attached a written waiver of his future rights under the PCRA. The trial court dismissed Raker's motion without a hearing and he timely appealed.

In his court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Raker raised three claims relating to trial counsel's ineffectiveness. In its Rule 1925(a) opinion, the trial court acknowledged the rule in **Grant**, but stated that it had exercised its discretion to consider Raker's claims in post-sentence motions under the "good cause shown/waiver" exception to **Grant** carved out by our Supreme Court in **Commonwealth v. Holmes**, 79 A.3d 562 (Pa. 2013) (holding trial court could exercise discretion to entertain ineffectiveness claims on post-sentence motions when claim of ineffectiveness is apparent from record and meritorious such that immediate consideration serves interest of justice or there is good cause shown and defendant has given knowing and express waiver, following full colloquy, of right to seek subsequent PCRA review). This Court dismissed Raker's appeal, holding that the trial court had abused its discretion in applying the **Holmes** exception, where no colloquy was held and Raker's written waiver did not

demonstrate his awareness of all relevant considerations. *See Commonwealth v. Raker*, 264 A.3d 380 (Pa. Super. 2021) (Table), at \*3.

On October 18, 2021, Raker filed the instant PCRA petition, raising the same ineffectiveness claims presented in his post-sentence motion. The Commonwealth filed a response and, on March 2, 2022, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss the petition. Raker filed a response and, on April 1, 2022, the court denied relief. On April 5, 2022, Raker filed a timely notice of appeal, followed by a court-ordered Rule 1925(b) statement. He raises the following claims for our review:

1. Was trial counsel ineffective for advising [Raker] to waive his right to testify?

2. Was trial counsel ineffective for [failing] to object to the prosecutor's improper closing argument?

3. Was trial counsel ineffective [in] her failure to properly prepare and present readily available witnesses to attest to [Raker's] excellent reputation in the community for chastity?

4. Did the [PCRA] court commit reversible error by denying [Raker's] request for an evidentiary hearing to examine trial counsel as to her ineffectiveness?

Brief of Appellant, at 3 (reordered for ease of disposition).

It is well-settled that, in reviewing the denial of PCRA relief, "we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (quotations and citations omitted). The PCRA court's credibility determinations are binding on this Court when they are supported by the

- 3 -

record; its legal conclusions, however, are subject to *de novo* review. ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1127 (Pa. 2011).

Here, Raker raises three claims of trial counsel's ineffectiveness. To establish such a claim, a petitioner must overcome the presumption that counsel was effective by proving "(1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted). "The failure to prove any one of the three prongs results in the failure of petitioner's claim." ***Id.***

Raker also claims that the PCRA court erred in dismissing his petition without first holding a hearing. Under Pennsylvania Rule of Criminal Procedure 907, the PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings[.]" Pa.R.Crim.P. 907(1). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Hanible***, 30 A.3d 426, 438 (Pa. 2011).

Raker first asserts that trial counsel was ineffective for advising him not to testify at trial. Specifically, Raker claims that, because the case "was a classic 'he said, she said,'" counsel's advice lacked any reasonable basis because "only [Raker] could provide the jury with evidence contradicting the alleged victim's testimony." Brief of Appellant, at 9, 11. "[W]ithout an alternative history of the relevant events, the jury was left with only the alleged victim's uncorroborated version of events[.]" *Id.* at 11-12. Raker asserts that, had he testified, the outcome of trial would have been different. *See id.* at 12. He is entitled to no relief.

> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, **or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf**.

*Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000) (emphasis added).

Here, Raker has failed to allege and offer to prove what advice counsel gave him and how it was unreasonable. *See id.* Rather, he baldly claims that counsel's advice "lacked any reasonable basis designed to effectuate [Raker's] interests." Brief of Appellant, at 9. This is insufficient. Raker's argument is devoid of any allegations of specific statements of trial counsel that might have misled him. Accordingly, he failed to raise a genuine issue of fact which, if proven, would entitle him to relief, *Hanible*, *supra*, and the PCRA court

- 5 -

properly denied relief without a hearing. *See Commonwealth v. Bazabe*, 590 A.2d 1298, 1302 (Pa. Super. 1991) (where issue is whether evidentiary hearing must be held, it is settled law that mere boilerplate allegations will not suffice to require hearing).

Importantly, the trial court engaged in a thorough colloquy with Raker regarding his decision not to testify. Raker stated, under oath, that he was aware of his right to testify, had discussed the matter with counsel, and made a knowing and intelligent decision not to testify. *See* N.T. Trial, 9/16/20, at 208-210. An appellant "is bound by the statements he makes in open court while under oath and he may not later . . . contradict the statements he made[.]" *Commonwealth v. Hopkins*, 228 A.3d 577, 583 (Pa. Super. 2020). Accordingly, Raker is entitled to no relief.

Raker next asserts that trial counsel was ineffective for failing to object to the prosecutor's allegedly improper closing argument. In particular, Raker claims that the prosecutor "made a number of statements . . . based upon her own personal experience with matters not on the record, which amounted to unsworn expert and lay witness testimony." Brief of Appellant, at 17. Raker argues that the statements had the effect of supporting the credibility of the victim and, given the importance of credibility in this matter, were prejudicial. *Id.* Raker complains about the following portion of the prosecutor's closing argument:

> I was in a serious car accident several years ago. I was actually on my way to work, not here, but when I worked someplace else. I was in a bad accident. And a gentleman went through a stop

sign and T-boned me. Now, I ended up having to be taken away by ambulance that day from the car crash. And, you know, it's funny the things that your mind remembers about a situation like that. And it's a traumatic situation. I mean, this is no difference in terms of things that we remember. I can remember being at the scene and saying over and over again about how I had just paid off my car and now it was totaled. They're loading me up into an ambulance, and all I care about is, you know, my car is gone and I've already paid it off.

You know, those are the things that I remember. I remember the fact that there was a public defender who stopped to help until the ambulance got there. He happened to be on his way to work, too, and was a volunteer firefighter. I remember that it was an older man who hit me. Beyond that, ladies and gentlemen of the jury, I couldn't tell you if it was a car that hit me. I couldn't tell you how fast I was going when that car hit me. I couldn't tell you what color the car was that hit me. I couldn't tell you where my car ended up after the crash, after the impact. Those are all details that just didn't resonate with me at the time because it was a traumatic situation. Everyone looks at things differently. I mean, I remember I was on my way to work. That would seem like an insignificant detail.

* * *

Now, in terms of, you know, one of the things that you're going to hear an instruction from the [c]ourt about is, you know, prompt complaint and she did not report immediately what had happened. And I think there's kind of a natural inclination—I mean, for example, my car accident, the police came right away. I think there's a natural inclination to think, gees, if a person has be[en] raped, . . . that they would report it immediately. But the reality of the situation is we know that folks don't. We know that they don't. I mean, you know, whether it be because of maturity, because of an understanding, because of our inability to understand, whether it be because of an emotional attachment to the family, whether it be because your parents won't believe you, she talked about that. She thought that her parents wouldn't believe her. Why? Why did she feel that way? Because her dad was really good friends with him. I mean that's how kids look at these things.

We can tell kids—and gosh, I go to schools all the time and tell kids that they will be believed if they talk about it, that they will be believed. But kids deep down still think to themselves if I talk about this, about the person who is a family friend, about the person who brings us food, about the person who lets my dad work with him, they're not going to believe me. It's sad, it's sad to think that kids in our society still feel that way, but it's the reality of the situation. And there's no doubt— You know, I'll get off my soapbox now—that's an area where we need to make strides.

N.T. Trial, 9/17/20, at 33-34, 42-43.

Raker alleges that the prosecutor's references to her automobile accident "were completely irrelevant to the charges against" him and she "invited the jury to excuse the victim's lapses of memory, allegedly resulting from the incident, by comparing them to [her own] lapses of memory resulting from her accident." Brief of Appellant, at 20-21. Raker asserts that the prosecutor's remarks were "unprofessional, improper, and prejudicial because she argued facts and opinions not in the record, thereby giving unsworn lay and expert testimony." *Id.* at 23. As such, counsel's failure to object undermined the truth-determining process, entitling Raker to a new trial. *Id.* He is entitled to no relief.

> A prosecutor has great discretion during closing argument; indeed, closing "argument" is just that: argument. [T]he prosecutor must limit [her] argument to the facts in evidence and legitimate inferences therefrom. However, the prosecutor must have reasonable latitude in [fairly] presenting [a] case [to the jury,] and must be free [to present] [her closing] arguments with logical force and vigor. Therefore, [c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict.

- 8 -

*Commonwealth v. Eichinger*, 108 A.3d 821, 836 (Pa. 2014) (internal citations and quotation marks omitted)

Here, the prosecutor's remarks did not have the unavoidable effect of causing bias, hostility, or prejudice in the minds of the jurors. *See id.* Rather, as the PCRA court correctly noted, her argument "directly addressed the [defense's] attack on the victim's credibility by utilizing an anecdotal example of memory." PCRA Court Opinion, 4/26/21, at 13. We agree with the Commonwealth that the prosecutor was not rendering "expert testimony," but rather "encouraging the jury to rely on its own experience to show how details sometimes can be important to one person but not [another]." Brief of Appellee, at 15.

Moreover, the trial court specifically instructed the jury that the remarks of counsel during argument are not to be considered as evidence.

> [THE COURT:] The speeches of counsel are not part of the evidence, and you should not consider them as such. However, in deciding the case, you should carefully consider the evidence in light of the various reasons and arguments each lawyer presented. It is the right and duty of each lawyer to discuss the evidence in a manner that is most favorable to the side she represents.
>
> You should be guided by each lawyer's arguments to the extent they are supported by the evidence and insofar as they aid you in applying your own reason and common sense. However, you are not required to accept the arguments of either counsel. It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions I am now giving you.

N.T. Trial, 9/17/20, at 214. The jury is presumed to have followed the court's instructions. *Commonwealth v. Flor*, 998 A.2d 606, 632 (Pa. 2010).

Accordingly, because trial counsel cannot be deemed ineffective for failing to raise a meritless objection, Raker is entitled to no relief on this claim.

Finally, Raker claims that trial counsel was ineffective for failing to properly prepare and present readily available character witnesses. Specifically, Raker asserts that there were six individuals present in the courthouse and ready to testify as to his excellent reputation in the community for chastity. *See* Brief of Appellant, at 12. Raker argues that the first such witness called to testify, Timothy Wert, "obviously was not prepared" and counsel thereafter failed to call the remaining witnesses. *Id.* at 13. Raker argues that, if counsel did not call the remaining witnesses because she had failed to prepare them properly, "that would constitute clear negligence on her part." *Id.* at 14. Moreover, given the nature of the case, Raker argues that counsel's failure to either prepare or present character testimony could not have had a reasonable basis designed to effectuate his interests. *Id.* at 16. However, because the PCRA court did not conduct a hearing, it could only speculate that counsel did not present the testimony because "presumably" the witnesses "did not meet the correct standard for character testimony." *Id.* at 13, quoting PCRA Court Opinion, at 10. Finally, Raker asserts that, had character testimony been presented, "the court would have been required to instruct the jury that evidence of [Raker's] excellent reputation in the community for chastity may, in and of itself, have been sufficient to raise a reasonable doubt[.]" *Id.* at 16.

The failure to call character witnesses does not constitute *per se* ineffectiveness. **Commonwealth v. Cox**, 983 A.2d 666, 693 (Pa. 2009) (citation omitted). Rather, to establish that defense counsel was ineffective for failing to call witnesses, a petitioner must prove:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

**Commonwealth v. Puksar**, 951 A.2d 267, 277 (Pa. 2008) (citation omitted).

Here, Raker attached to his PCRA petition the statements of six individuals who indicated that they were present in the courthouse, willing and expecting to be called to testify as to Raker's reputation in the community for chastity. The individuals all stated that Raker's counsel failed to review with them the questions she would be asking on direct examination. Timothy Wert, who briefly took the stand but was quickly dismissed, **see** discussion, **infra**, indicated in his written statement that counsel had failed to properly prepare him to testify and that he was, in fact, familiar with Raker's reputation in the community for chastity. Thus, Raker has satisfied the first four prongs of the test for ineffectiveness for failure to call character witnesses.

As to the question of prejudice, this Court has previously observed that:

> In a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a

reasonable doubt of guilt and, thus, require a verdict of not guilty[.]

***Commonwealth v. Hull***, 982 A.2d 1020, 1025–26 (Pa. Super. 2009), quoting ***Commonwealth v. Weiss***, 606 A.2d 439, 442 (Pa. 1992). In light of the nature of this case, in which the only evidence against Raker was the testimony of the complainant, character evidence is critical. Accordingly, Raker's claim possesses arguable merit. The sole remaining question is whether trial counsel had a reasonable basis for failing to call character witnesses.

The PCRA court denied this claim based on counsel's prerogative to make strategic decisions.

> Here, trial counsel did not fail to find or prepare potential character witnesses as they were physically present at trial and ready to testify. Indeed, Tim Wert, a potential character witness was called to the stand to testify by trial counsel. The Commonwealth objected to the testimony because he attempted to testify to his personal beliefs regarding [Raker] instead of community consensus as required. As a result, the witness was prohibited from testifying further. Trial counsel is permitted to make strategic decisions. **Here, trial counsel's decision to not call the remaining character witnesses is presumably because they, like Tim Wert, did not meet the correct standard for character testimony**. As [Raker] fails to show how this testimony would have met the proper standard for character testimony and how it would have changed the outcome of trial, we must find this argument lacks merit.

PCRA Court Opinion, 4/26/21, at 9-10 (citations to record omitted).

However, there is nothing in the record to support the court's finding that counsel made a "strategic decision" to forgo character testimony. Having declined to hold a hearing and receive testimony from trial counsel as to her

trial strategy, the PCRA court simply made an assumption. ***See id.*** at 10 (trial court concluding trial counsel did not call remaining character witnesses because, "presumably," they could not meet the standard for character testimony).

In fact, a review of the trial record lends credence to Raker's allegation that trial counsel failed to properly prepare Timothy Wert and the other potential witnesses. Rather than demonstrating that Wert could not testify to Raker's community reputation for chastity, the transcript supports the contention that Wert was unprepared for the questions he was asked. Wert's testimony proceeded as follows:

Q. Mr. Wert, could you say your name and spell it for the court reporter, please?

A. Timothy Wert, W-e-r-t.

Q. And, Mr. Wert, I don't need to know your house address, but where do you live?

A. I live in Millersburg.

Q. Do you know the gentleman sitting to my right?

A. Yes, I do.

Q. How long have you known, um, Mr. Raker?

A. Real close to 50 years.

Q. And, um, and are you familiar—and without any specific for instance—are you familiar, um— Let me ask you this. Where Mr. Raker lives, it's in that [] Millersburg kind of greater area, right?

A. Yes.

Q. So are you familiar, um, with Mr. Raker's reputation for chastity in your community?

- 13 -

A. Yeah. I see him talking to—

Q. No. No. So it can only be— Are you familiar with his reputation? Not what you see, but— Let me ask you this[:] You're a part of the community there in Millersburg, right?

A. Right.

Q. And, um, do you meet with—for breakfast in a—in a group of, um, retired folks?

A. Right.

Q. Okay. So what I asked you about was Mr. Raker's reputation for, um, chastity. And in [] particular—I want to sort of explain a little bit, [c]hastity, like, you know, out catting around or something of that sort. Are you familiar with his reputation for chastity?

A. Yes

Q. And, [i]n your community, what [] is his reputation with regard to chastity?

A. That he is a—basically a home person. So[,] he—I've never seen him out running around.

    [ASSISTANT DISTRICT ATTORNEY]: Objection. Your Honor, may we approach, please?

    THE COURT: You may.

    (A discussion was held off the record at sidebar.)

    THE COURT: Sir, you may step down.

    (A discussion was held off the record at sidebar.)

    [DEFENSE COUNSEL]: At this point, Your Honor, I have no further witnesses.

N.T. Trial, 9/16/20, at 204-06.

Raker's assertion that counsel failed to properly prepare Wert is supported by the fact that counsel felt the need to define for Wert—in the middle of his testimony—the meaning of the word "chastity." Moreover, Wert

- 14 -

indicated in his sworn statement that he was, in fact, aware of Raker's reputation for chastity and was not properly prepared by counsel to testify. Without an evidentiary hearing, the court lacked any record basis to conclude that counsel's failure to present character testimony was grounded in sound trial strategy.  As our Supreme Court has stated,

> the court should not glean or surmise from the record whether [counsel] had a reasonable basis for [her] action or inaction.  It is only in the most clear-cut of cases that the reasons for the conduct of counsel are clear from the record.  Thus, only where the record clearly establishes that the action or omission of [counsel] was without a reasonable basis should the court resolve the reasonable basis prong absent a remand for an evidentiary hearing as to the strategy of counsel[.]

*Commonwealth v. McGill*, 832 A.2d 1014, 1022 (Pa. 2003).

Where, as here, there are only two witnesses to the events in question, the credibility of the witnesses was of paramount importance, and counsel's failure to employ character witnesses undermined Raker's chances of instilling reasonable doubt in the minds of the jury and could have resulted in prejudice to Raker. Because the PCRA court failed to hold a hearing, the record before us is incomplete as to counsel's rationale for forgoing such testimony. Accordingly, we are constrained to vacate the PCRA court's order to the extent that it denied relief on this claim, and remand the case for a hearing, at which time the court may hear the testimony of trial counsel and any other witnesses the parties deem appropriate.

Order affirmed in part and vacated in part. Case remanded for a hearing in accordance with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2022