J-S74038-19

2020 PA Super 25

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TAYLOR HOPKINS | : | |
| | : | |
| Appellant | : | No. 1242 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 19, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001595-2018

BEFORE: BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **Filed: February 7, 2020**

Appellant Taylor Hopkins appeals the judgment of sentence entered by the Court of Common Pleas of Bucks County after a jury convicted Appellant of Drug Delivery Resulting in Death,[1] five counts of Delivery of Heroin,[2] one count of Possession With Intent to Deliver a Controlled Substance (PWID),[3] four counts of Criminal Use of a Communication Facility,[4] and one count of Recklessly Endangering Another Person (REAP).[5] Appellant asserts that the trial court erred in allowing Appellant to waive his right to file post-trial

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. § 2506(a).
[2] 35 P.S. § 780-113(a)(30).
[3] 35 P.S. § 780-113(a)(30).
[4] 18 Pa.C.S.A. § 7512(a).
[5] 18 Pa.C.S.A. § 2705.

motions, post-sentence motions, a direct appeal, and a Post Conviction Relief

Act (PCRA) petition in exchange for a negotiated sentence.  We affirm.

The trial court summarized the factual history of this case as follows:

On May 4, 2017, Theresa Johnson and Maryanne Cominsky were doing drugs together and decided to contact Appellant to purchase heroin.  Appellant subsequently sold Johnson and Cominsky two bundles of heroin for $40 each.  Theresa Johnson testified that the bundle she received consisted of ten baggies stamped with the word "Kanye."  After making this sale, Appellant drove Johnson and Cominsky in his silver Hyundai to Gary DeGennaro's house in Levittown, Pennsylvania.  Theresa Johnson subsequently dropped Maryanne Cominsky and Gary DeGennaro off at the Country House Motel in Morrisville, Pennsylvania around 2:00 P.M. using DeGennaro's vehicle.  Johnson testified that DeGennaro called her at approximately 10:00 P.M. because Cominsky was blue and not breathing.  Johnson then called 911.

When detectives responded to the motel room, they observed the victim on the bathroom floor with drug paraphernalia scattered around her and a wax baggie with a "Kanye" stamp on top of the toilet tank.  Dr. Erika Williams, a forensic pathologist, testified that Maryanne Cominsky died as a result of cocaine and heroin intoxication.  Ayako Chan-Hosokawa, a forensic toxicologist, confirmed that lethal amounts of heroin were found in the victim's system.

Andrea Budzakova contacted Appellant via cell phone and made four controlled buys of heroin from him on May 25, 2017, May 31, 2017, June 8, 2017, and June 27, 2017.  All [four] times she purchased two bundles of "Kanye"-stamped heroin at a cost of $80.  Appellant drove his silver Hyundai to each of these buys.  Budzakova also testified that she was present during a conversation in which Appellant said "something about the girl dying from heroin he sold her" and that he was using the "Kanye" stamp at the time of the overdose.  Budzakova wore a wire during the June 27, 2017, controlled buy and asked Appellant whether the drugs he was selling her were the same type that resulted in an overdose death, to which Appellant responded in the affirmative.

On June 28, 2017, detectives executed a search warrant at Appellant's apartment in Morrisville, Pennsylvania and seized eighty bags of "Kanye"-stamped heroin, which were located in a Similac container in a cabinet. Appellant's silver Hyundai was parked outside the apartment at the time. The wax paper baggies uncovered during the search were marked "Kanye" in blue ink and were identical to the empty baggie that detectives discovered in the victim's motel room on May 4, 2017.

Trial Court Opinion (T.C.O.), 6/13/19, at 1-2 (citations omitted).

On December 7, 2018, a jury convicted Appellant of the aforementioned offenses. The trial court deferred the sentencing hearing to February 19, 2019, to allow for the completion of a pre-sentence investigation. Before sentencing, on December 29, 2018 and January 4, 2019, Appellant filed two separate documents, which both were entitled "Post-Sentence Motion for a New Trial pursuant to Pa.R.C.P. 720(c)."

In these post-*trial* motions, Appellant claimed he was entitled to a new trial based on "after-discovered evidence" that prosecution witness Gary DeGennaro had been convicted of four summary offenses and was on probation at the time of Appellant's trial. Appellant suggested the prosecution's failure to turn over DeGennaro's criminal record violated ***Brady v. Maryland***, 373 U.S. 83 (1963).

The prosecution asserted that Appellant was not entitled to relief as the defense could have obtained information regarding DeGennaro's criminal record through a non-governmental source (online public docket sheets). In addition, the prosecution argued that the information would solely be used for impeachment purposes and would not result in a different verdict due to the

overwhelming amount of evidence against Appellant. The trial court scheduled a hearing on these motions for the same day as Appellant's sentencing hearing.

On February 19, 2019, Appellant indicated that he wished to waive his rights to file post-trial motions, post-sentence motions, a direct appeal, and a PCRA petition in exchange for a negotiated sentence of seven to fifteen years' incarceration. Defense counsel and the trial court conducted an oral colloquy to ensure Appellant understood the rights he was waiving in exchange for a lenient sentence. After accepting the appeal waiver, the trial court imposed concurrent sentences of seven to fifteen years' imprisonment on the Drug Delivery Resulting in Death charge and the five Delivery of Heroin charges. The trial court denied Appellant's post-trial motions.

On March 21, 2019, Appellant filed a *pro se* notice of appeal. On April 8, 2019, the trial court vacated the appointment of Appellant's trial counsel, John J. Fioravanti, Jr., Esq. and appointed Marc. S. Stollee, Esq. as appellate counsel. On April 18, 2019, Atty. Stollee filed a counseled notice of appeal.

Appellant raises one issue for our review on appeal:

> Did the trial court error [sic] in allowing Appellant to waive his post sentence motions, appellate rights and Post Conviction Relief Act petition when his waiver was not knowing, intelligent, and voluntary given the fact that Appellant was under duress to make such a decision without adequate time to fully consider the ramifications of waiving such rights[?]

Appellant's Brief, at 5.

- 4 -

We first assess whether this appeal was timely as Appellant filed a *pro se* notice of appeal while represented by counsel. As hybrid representation is not permitted in the Commonwealth, our courts "will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." ***Commonwealth v. Williams***, 151 A.3d 621, 623 (Pa.Super. 2016) (citation omitted).

However, when a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity and has legal effect. ***Commonwealth v. Cooper***, 611 Pa. 437, 27 A.3d 994, 1007 (2011). While a defendant does not have a right to hybrid representation, "there is a right of appeal pursuant to Article 5, § 9 of the Pennsylvania Constitution." ***Williams***, 151 A.3d at 624 (citing ***Commonwealth v. Ellis***, 534 Pa. 176, 626 A.2d 1137 (1993)). "Because a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy in creating a motion, petition, or brief." ***Williams***, 151 A.3d at 624.

As such, Appellant's *pro se* notice of appeal was timely and had legal effect. Thus, we may evaluate Appellant's claim that his waiver was unknowing and involuntary due to coercion by counsel. Appellant concedes he agreed to an appeal waiver in exchange for a negotiated sentence.

As noted above, a defendant is provided a constitutional right to an appeal by Article 5, Section 9 of the Pennsylvania Constitution, which specifically states:

> There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

Pa. Const. art. 5, § 9.

Nevertheless, in noting "the importance of the plea bargaining process as a significant part of the criminal justice system," this Court has recognized that a criminal defendant is permitted to "waive valuable rights in exchange for important concessions by the Commonwealth." *Commonwealth v. Widmer*, 120 A.3d 1023, 1027 (Pa.Super. 2015) (quoting *Commonwealth v. Byrne*, 833 A.2d 729, 735 (Pa.Super. 2003) (citations omitted)).

Moreover, we note that "a defendant routinely waives a plethora of constitutional rights by pleading guilty, including the right to a jury trial by his peers, the right to have the Commonwealth prove his guilt beyond a reasonable doubt, and his right to confront any witnesses against him." *Byrne*, 833 A.2d at 735–36 (citations omitted). *See also Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) ("The most basic rights of criminal defendants are ... subject to waiver").

However, this Court has emphasized that "the constitutional right to appeal is a personal right which may be relinquished only through a knowing, voluntary and intelligent waiver." *Commonwealth v. Doty*, 997 A.2d 1184, 1186–87 (Pa.Super 2010) (citations omitted). For an appeal waiver to be effective, "the accused must be aware of all of his rights incident to an appeal,

and with such knowledge intentionally abandon or fail to exercise them."
***Commonwealth v. Maloy***, 438 Pa. 261, 263, 264 A.2d 697, 698 (1970).[6]

In this case, Appellant asserts that his waiver of his appellate rights was unknowing and involuntary as he was "lured into accepting the agreement based on the sentence agreement of 7 to 15 years." Appellant's Brief, at 16. Appellant argues that he was under duress to agree to this waiver as his counsel coerced him into doing so.

To ensure that Appellant's appeal waiver was knowing and voluntary, defense counsel conducted the following oral colloquy on the record:

> [Defense counsel:] Your Honor, for your consideration, I believe we have an agreement in terms of sentencing with the understanding that [Appellant] would waive his appellate and post-conviction rights.
>
> [Trial court:] All right.
>
> [Prosecutor:] Your Honor, we recommended, based on this agreement, a sentence of total incarceration of not less than 7 to not more than 15 years.
>
> [Trial court:] All right. Do you want to inquire of your client?

---

[6] The United States Supreme Court and the Third Circuit Court of Appeals have recognized that a defendant may waive his right to file an appeal and a petition for post-conviction relief if such waiver is knowing and voluntary. ***See Garza v. Idaho***, ___U.S.___, 139 S. Ct. 738, 744 (2019) (discussing "appeal waivers" and noting that "defendants retain the right to challenge whether the waiver itself is valid and enforceable"); ***U.S. v. Grimes***, 739 F.3d 125, 128–29 (3rd Cir. 2014) (holding that "[w]e will enforce an appellate waiver and decline to review the merits of an appeal where we conclude (1) that the issues [the defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice").

[Defense counsel:] I would. [Appellant,] you are aware of the terms of this agreement; are you not?

[Appellant:] Yes.

[Defense counsel:] And it is your intention to accept this agreement?

[Appellant:] Yes.

[Defense counsel:] And you understand that by doing this you are agreeing that you are waiving your rights to a filing of any post sentence motions or appellate rights to the Pennsylvania Superior Court. Do you understand that?

[Appellant:] Yes.

[Defense counsel:] Where you would challenge your conviction, challenge the admission of evidence, and, in fact, challenge the very aspect of the motion that we are here for today in terms of the after-discoverable ***Brady*** violations. Do you understand that?

[Appellant:] Yes.

[Defense counsel:] You also understand that you have a right within a year of the final judgments against you to file what's called a Post Conviction Hearing Act Petition, where you could allege ineffective assistance of trial counsel. We talked about that, right?

[Appellant:] Yeah.

[Defense counsel:] We talked about the idea that certain – this After-Discovered Evidence, perhaps, could have been discovered by me, the due diligence, and you understand by entering into this agreement you're waiving your right to file that post conviction [petition]. Do you understand that?

[Appellant:] Yes.

[Defense counsel:] Are you doing this voluntarily and of your own free will?

[Appellant:] Yes.

[Defense counsel:] And you understand that in terms of a potential federal *habeas corpus* petition, you would be barred from litigating that because you're procedurally defaulted by virtue of

the fact that you will not be raising appellate issues in this Commonwealth? Do you understand that?

[Appellant:] Yes.

[Defense counsel:] In other words, you can't attack your conviction federally if you waive your appellate rights here. Do you understand that?

[Appellant:] Yes.

[Defense counsel:] And are you willing to do that?

[Appellant:] Yes.

Notes of Testimony (N.T.), 2/19/19, at 12-15.

The trial court then continued to question in detail Appellant about his choice to waive his appellate and collateral review rights:

[Trial court:] Are you taking any medications?

[Appellant:] No.

[Trial court:] Are you under the influence of drugs or alcohol?

[Appellant:] No.

[Trial court:] *Have you had enough time to talk to [defense counsel] about this offer?*

[Appellant:] *Yes.*

[Trial court:] *I specifically gave you time to talk to your family; isn't that correct?*

[Appellant:] *Yes.*

[Trial court:] Has anybody threatened you or forced you to do this?

[Appellant:] No.

[Trial Court:] So you understand, when [defense counsel] says you're giving up the right to raise any issues, including things like whether these matters should have been consolidated for trial, do you understand that?

[Appellant:]  Yes.

[Trial court:] So all the things that your lawyer objected to during the course of the proceeding and any motions that you raise, those are forever being given up.  Do you understand that?

[Appellant:]  Yes.

[Trial court:] In exchange for this offer?

[Appellant:]  Yes.

[Trial court:] This is not RRRI, correct?

[Prosecutor:]  Correct.

[Trial court:] Do you understand that too?

[Appellant:]  Yes.

[Trial court:] Do you have any questions about any of this?

[Appellant:]  No.

*Id*. at 15-16 (emphasis added).

We agree with the trial court that Appellant clearly demonstrated that he understood his rights incident to appeal and that he intentionally waived such rights in exchange for his negotiated sentence.  Although Appellant argues that he was coerced or "lured" into making this agreement when he did not have enough time to adequately contemplate the offer, this assertion is contradicted by Appellant's express statements on the record that he understood the ramifications of the appeal waiver and had enough time to discuss the offer with his counsel and his family.  This Court has held that a defendant "is bound by the statements he makes in open court while under oath and he may not later … contradict the statements he made…"

- 10 -

*Commonwealth v. Pier*, 182 A.3d 476, 480 (Pa.Super. 2018) (quoting *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003)).

While Appellant argues that he was urged by his counsel and family members to accept this offer, Appellant has not shown that his waiver was rendered involuntary. After Appellant was convicted of Drug Delivery Resulting in Death and multiple counts of Delivery of Heroin, the Commonwealth offered Appellant the negotiated sentence of seven to fifteen years imprisonment, which was lower than the prosecution's initial pretrial offer of eight to twenty years' imprisonment. By entering into the appeal waiver, Appellant avoided the risk of a substantially longer sentence, which the trial court could have imposed if it chose to run several individual sentences consecutively.

Further, Appellant suggests trial counsel acted in self-interest in coercing Appellant to waive his right to litigate his post-trial motion, as trial counsel failed to exercise due diligence in neglecting to produce the prior criminal record of prosecution witness DeGennaro before Appellant's trial. As such, Appellant is alleging that his appeal waiver was invalid due to the ineffectiveness of his trial counsel.

Generally, "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." *Commonwealth v. Holmes*, 621 Pa. 595, 620, 79 A.3d 562, 576

(2013) (footnote omitted). However, our Supreme Court has recognized three exceptions to this general rule:

> The first exception ... affords trial courts discretion to entertain ineffectiveness claims in extraordinary circumstances where a discrete claim of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice. The second exception ... gives trial courts discretion to address ineffectiveness claims on post-sentence motions and direct appeal if there is good cause shown and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence.

*Commonwealth v. Delgros*, 646 Pa. 27, 40, 183 A.3d 352, 360 (2018) (citing *Holmes*, 621 Pa. at 598-99, 79 A.3d at 563-564). The third exception allows "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." *Delgros*, 646 Pa. at 42, 183 A.3d at 361.

Although Appellant knowingly and expressly waived his entitlement to seek subsequent PCRA review of his conviction and sentence, we observe that his challenge to trial counsel's ineffectiveness is not developed for our review with citation to relevant authority or any analysis of the claim. As such, we find this specific claim to be waived by Appellant's lack of development. *See Commonwealth v. Perez*, 625 Pa. 601, 616, 93 A.3d 829, 838 (2014) (finding the appellant's claims to be waived due to his failure to include developed argument or citation to supporting authorities and the record).

Based on our review of the record, we conclude that Appellant made a knowing and voluntary waiver of his right to seek further review in a post-trial

motion, post-sentence motion, direct appeal, or PCRA petition in exchange for his negotiated sentence.  As a result, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/7/20