J-S15033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TASHAWN KHALIL HUNTER | : | |
| | : | |
| Appellant | : | No. 2232 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 10, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0001538-2021

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED OCTOBER 8, 2024**

Tashawn Khalil Hunter appeals *nunc pro tunc* from the judgment of sentence imposed following both a jury and bench trial in which he was found guilty of, *inter alia*, three counts of aggravated assault. On appeal, Hunter raises two issues, arguing that: (1) he was not fully apprised of his counsel's trial readiness due to her exposure to COVID-19 and reported condition on the morning of trial; and (2) the court abused its discretion by allowing evidence of his possession of marijuana during his criminal activities. Following a thorough review of the record, we affirm.

Briefly, this matter arises

following an automobile accident involving [Hunter] and his fiancée and infant child. While [Hunter] and his fiancée and child were receiving treatment at Lehigh Valley Hospital-Pocono in East Stroudsburg, PA, [Hunter's] behavior toward staff became loud,

_____

[*] Retired Senior Judge assigned to the Superior Court.

unruly and threatening. When hospital security were called, [Hunter] continued to be threatening, combative, and eventually physical as to the hospital security personnel. The behavior continued throughout the halls of the hospital until police arrived, at which time [Hunter] was placed under arrest. [Hunter] continued his verbal and physical aggressions even while in custody.

Trial Court Opinion, 2/3/23, at 2. On April 12, 2022, a jury found Hunter guilty of three counts each of aggravated assault and simple assault, four counts of disorderly conduct, two counts of aggravated harassment by prisoner, and one count each of terroristic threats and resisting arrest.[1] In addition, the trial court found Hunter guilty of two counts of the summary offense of harassment.[2] On June 10, 2022, the trial court sentenced Hunter to an aggregate sentence of 36 to 72 months' imprisonment.

Although he was represented by the Monroe County Public Defender's Office throughout his jury and bench trials, with representation continuing through his sentencing date, the lower court appointed his present counsel on August 1, 2022, following a post-sentence breakdown in communications between Hunter and that Office, evidenced by the Office's motion to appoint new counsel. However, when present counsel was appointed to pursue his post-trial options, "more than thirty … days had passed from the date of [Hunter's] sentencing." Motion for Post Conviction Collateral Relief, 7/23/24,

---

[1] 18 Pa.C.S. §§ 2701(a)(1), (3), 2702(a)(3), (6), 2703.1, 2706(a)(1), 5104, 5503(a)(1)-(4).

[2] 18 Pa.C.S. § 2709(a)(1).

¶ 4. Although the lower court, following a hearing, fully adjudicated his counseled post-trial motion, "the time period for filing an appeal to [this Court] had elapsed before counsel was able to work on Hunter's behalf." *Id*., ¶ 5. Ultimately, the lower court granted Hunter relief, restoring his "full appellate rights following conviction[.]" Order, 8/16/23. Hunter then promptly filed a notice of appeal and has correspondingly complied with his Pa.R.A.P. 1925 obligations.

On appeal, Hunter raises two issues:

1. Did the trial court err insofar as it did not fully and adequately inform Hunter that his trial attorney had told the court she had been exposed to COVID-19 and that she was feeling dizzy and disoriented on the morning of trial?

2. Did the trial court err by allowing the Commonwealth to introduce evidence that Hunter had marijuana on his person prior to his arrest where such information was prejudicial and served no useful or necessary probable purpose for the jury?

Appellant's Brief, at 11.

Regarding Hunter's first claim, prior to trial, Hunter's trial counsel indicated to the court, outside of Hunter's presence, that "[s]omeone in [her] office was exposed to COVID[.] … [Counsel] fe[lt] a little sick th[e] morning [of trial]." N.T., 4/11/22, at 10. Counsel admitted that it was "possible that [she was] COVID positive." *Id*. Counsel further noted that she felt "a little dizzy so [continuing] may be difficult but [that she was] okay right now." *Id*., at 11. Finally, counsel requested that she would bring up her COVID exposure and symptoms with Hunter to "make sure that he is okay with proceeding

since he's going to be right next to [counsel]." *Id*.

When the court spoke openly a few moments later after the defendant was brought into the courtroom, it was noted that counsel "indicated that someone in her office took ill and tested positive for COVID[.]" *Id*., at 14. The court provided that counsel had a "scratchy throat … but seemed to think that she could proceed[.]" *Id*. Immediately thereafter, counsel conveyed that after apprising Hunter of her condition, she asked him about his desire to proceed with trial. *See id*. Hunter assented. *See id*.

On appeal, Hunter avers that he was ill-informed about the extent of counsel's condition. Specifically, Hunter claims that he was not able to make an intelligent and knowing decision as to whether he should go forward with his trial because while he knew she "was under the weather," N.T., 1/19/23, at 10, he was unaware of the symptoms counsel had admitted before the court. Hunter knew that "somebody in the Public Defender's Office had COVID, and that [counsel] might have been exposed to it[.]" *Id*. Hunter then stated that counsel inquired into whether he wanted to proceed with the trial. *See id*., at 11.

In its opinion, the court wrote that it "saw no evidence [that counsel] was in any way hampered or deficient due to illness." Trial Court Opinion, 2/3/23, at 6. Instead, counsel "appears to have represented [Hunter] adequately through trial." *Id*.

Hunter does not identify any trial court ruling that he is challenging, and

his brief is devoid of any authority that would require the trial court to take affirmative action to remove his counsel in this situation. At root, Hunter's claim is not one of trial court error but instead is based upon the alleged deficient performance of his counsel in not properly informing him of the extent of her infection and condition. A claim of ineffective assistance is not cognizable on direct appeal and must be deferred to collateral review under the Post Conviction Review Act (PCRA), 42 Pa.C.S. §§ 9541-9546. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (stating that, except in limited, identified circumstances, "claims of ineffective assistance of counsel are to be deferred to PCRA review"); *Commonwealth v. Hopkins*, 228 A.3d 577, 584 (Pa. Super. 2020) (same).[3] Therefore, Hunter is presently entitled to no relief on this claim.

In his second claim, Hunter alleges that information demonstrating his possession of marijuana at the time of the incident in question—specifically "marijuana, a grinder and suspected marijuana pills," N.T., 4/11/22, at 8, that

---

[3] Hunter raised this issue through substitute counsel in his post-trial motion, framing the issue as one of a request for a new trial. *See* First Amended Motion to Reconsider Sentence and Post-Trial Motions, 12/19/22, ¶¶ 22-24. While a trial court retains discretion to consider counsel ineffectiveness claims on direct review, it may do so only where there is good cause shown and "the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence[.]" *Holmes*, 79 A.3d at 564. Here, Hunter did not demonstrate good cause to consider an ineffectiveness claim on direct review nor did he waive his entitlement to separate collateral review of his claims.

hospital personnel removed from his pants while he was receiving treatment—should not have been admitted at trial. Hunter argues that while the Commonwealth suggested his possession of "marijuana and a grinder … was … relevant because [he] was anxious to find his personal items and his wallet when he [woke] up in the hospital," Appellant's Brief, at 20, it made "no difference why Hunter was trying to find his possessions." *Id*., at 21. "His behavior was erratic by any standard[;] there was [no] need for the jury to find a rational purpose for one action within an otherwise irrational series of actions." *Id*. Instead, the inclusion of such information was "heavily outweighed by the prejudice that such information brought to the equation." *Id*. Hunter then concludes that "[t]he only reason to specifically mention otherwise legal marijuana is a knowledge that many people, especially older people, would be likely to have a negative connotation regarding marijuana in light of it having been illegal for the majority of their lives." *Id*. In effect, the jury held this information against Hunter, thinking he was more likely to commit criminal offenses. *See id*.

Our well-settled standard of review establishes that questions concerning the admissibility of evidence are "within the sound discretion of the trial court ... [and] we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." *Commonwealth v. Brown*, 52 A.3d 1139, 1197 (Pa. 2012) (citation omitted). An "[a]buse of discretion is not merely an error of judgment, but

rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Williams***, 241 A.3d 1094, 1101 (Pa. Super. 2020) (citation omitted). For evidence to be admissible, it must be relevant.

> Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Building upon this definition, Rule 402 provides, in full, as follows: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Thus, while the general rule of the admissibility of relevant evidence is subject to various exceptions, the rule that irrelevant evidence is not admissible is categorical. Accordingly, "[t]he threshold inquiry with admission of evidence is whether the evidence is relevant."

***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008) (internal citations omitted). Even where found to be relevant, Rule 403 allows for the exclusion of evidence "if its probative value is outweighed by a danger of," *inter alia*, unfair prejudice. Pa.R.E. 403.

Prior to trial, Hunter filed a motion *in limine* seeking the preclusion of any trial testimony regarding his possession of marijuana. ***See*** Motion In Limine, 4/11/22, ¶ 4. Hunter asserted at oral argument on the motion that testimony regarding his possession of marijuana is "more prejudicial than probative" because he was "in legal possession of a medical marijuana card" and he was not charged with a controlled substance or paraphernalia offense. N.T., 4/11/22, at 7, 9. Conversely, the Commonwealth averred the

marijuana evidence was "relevant and highly probative." *Id.*, at 8. The Commonwealth indicated that when the nursing staff at the hospital "returned to him his pants … he became irate because the contents of his pockets were taken by the security guards as contraband." *Id*. "When they did this he became irate, started screaming at staff making threats which led to the entire underlying criminal incident." *Id*. As such, it served "as the entire motivation for why [Hunter] acted the way that he did and is highly probative of his actions and motivations on the date of the incident." *Id*., at 8-9. The trial court denied the motion because the Commonwealth had "to explain why this whole event occurred and [the marijuana is] part of the explanation." *Id.*, at 10.

Later, during the trial, the court indicated at sidebar that it was allowing references to Hunter's possession of marijuana "solely for the narrative of why he reacted the way that he did; but you know it could have been anything in his pocket he was angry about." N.T., 4/12/22, at 45. The court explicitly forbade "getting into the legality of" marijuana-related issues "because there's no charges here for that." *Id*. Finally, in its closing instructions, the court stated that "testimony or evidence of marijuana or what may be considered paraphernalia items that were mentioned in this case" may not be considered "as evidence of a crime or criminal or illegal behavior by [Hunter]." *Id*., at 92. This prohibition was because Hunter had not been charged "with anything to do with such possession of those items" and was not "proof of bad behavior[.]"

*Id*., at 92-93.

In its opinion, paralleling the Commonwealth's position, the court wrote that it denied Hunter's motion *in limine* because the genesis of Hunter's actions began when he "got angry when he could not find the marijuana that was in his pants pockets when he came into the hospital. His behavior became belligerent when staff tried to explain. It was relevant to the entire episode that occurred that day and was not so overly prejudicial to require a new trial." Trial Court Opinion, 2/3/23, at 6.

Given the sound discretion afforded to trial courts in evidentiary determinations and when juxtaposed against the explicit limiting instructions that the court gave not only to the Commonwealth in the development of these facts but also to the jury prior to its deliberations, we find no abuse of discretion in the court's allowance of evidence regarding Hunter's marijuana possession. The fact that marijuana and related items were removed from Hunter's pockets as contraband was relevant because it tended to show Hunter's motivation for confronting various hospital personnel seeking the return of these items. Furthermore, we cannot fault the trial court's determination that the prejudice from the admission of this evidence did not outweigh its probative value, particularly in light of the restrictions the court placed on the Commonwealth's use of the evidence, as well as the limiting instruction the court provided to the jury not to consider Hunter's possession of marijuana as indicative of his illegal or bad behavior. While Hunter provides

several pieces of authority that outline our evidentiary standard of review, there is nothing in his brief, nor anything obvious from the record, to suggest that the court acted in a manifestly unreasonable way.[4] As such, Hunter's second issue, too, warrants no relief, and we correspondingly affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/8/2024

_____

[4] While Hunter's claim to exclude the marijuana evidence seemingly invokes Rule 404(b)'s restriction on the use of other bad act evidence to show an individual's propensity to act in accordance with his or her character, Hunter did not cite this rule in his motion *in limine*, at oral argument on this motion, or in his appellate brief. Therefore, the question of whether Rule 404(b) would have precluded the admission of the at-issue evidence is not before us in this appeal. Even if the issue were properly raised, we would conclude that the evidence of Hunter's possession of marijuana falls within the *res gestae* permitted use for other bad act evidence, as it tended "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." **Commonwealth v. Yocolano**, 169 A.3d 47, 55 (Pa. Super. 2017); **see also** Trial Court Opinion, 2/3/23, at 6 (trial court holding that the marijuana "was relevant to the entire episode that occurred that day").