J-S46029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CALVIN STEWART ALSTON | : | |
| | : | |
| Appellant | : | No. 912 WDA 2025 |

Appeal from the PCRA Order Entered June 27, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012015-2018

BEFORE: BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.: **FILED: May 13, 2026**

Appellant Calvin Stewart Alston appeals from the order dismissing his

Post-Conviction Relief Act[1] (PCRA) petition without an evidentiary hearing.

Appellant claims that the PCRA court erred by dismissing his petition in which

he claimed that trial counsel was ineffective. After review, we reverse and

remand for further proceedings consistent with this memorandum.

A previous panel of this Court set forth the facts and procedural history

of this case as follows:

> On July 28, 2018, at approximately 11:00 p.m., [Appellant] shot
> and killed his girlfriend, Vera Butler, on the sidewalk in front of
> her Northside home on Luray Street. She was shot four (4) times
> and tragically succumbed to her injuries at 11:36 p.m., when she
> was pronounced dead on the scene by the paramedic crew.
>
> Harold Neal, Ms. Butler's neighbor, identified [Appellant] as the
> shooter at trial. Mr. Neal saw [Appellant] with the victim just

---

[1] 42 Pa.C.S. §§ 9541-9546.

minutes before she was killed, and he saw [Appellant] with a firearm immediately after the shots were fired. Mr. Neal had been Ms. Butler's neighbor for approximately 9-10 years, and he knew her well. Mr. Neal was able to identify [Appellant] on the night of the murder because he was familiar with [him] based on past interactions. Mr. Neal had seen [Appellant] "multiple times" in person, and he would say hello to [him] "anytime" that he saw him. Mr. Neal testified that, on the night of the murder, he went outside to meet a friend at approximately 10:30 p.m., just before the shooting. His friend arrived in a vehicle and parked directly in front of [Appellant]'s black pickup truck on Luray Street. As Mr. Neal walked towards his friend's car, he saw Ms. Butler sitting with "her boyfriend, Calvin" in his truck, which was an older model Chevy. Mr. Neal knew it was [Appellant's] truck because he had never seen anyone but [Appellant] drive that truck in the past. He saw [Appellant] sitting in the driver's seat and Ms. Butler in the passenger seat. The truck was parked so that the passenger side of the truck was positioned across the street from Mr. Neal's house.

As Mr. Neal passed by [Appellant's] truck, Mr. Neal said, "hey, how y'all doing?" Both [Appellant] and Ms. Butler put their hands up to acknowledge him and gesture hello. At that time, the street was quiet, and there was no foot or car traffic in the area. Mr. Neal sat in his friend's car, and the two had a conversation that lasted approximately five (5) minutes. When Mr. Neal got out of the car, [Appellant] and Ms. Butler were still in [Appellant]'s truck. When Mr. Neal walked past them for the second time, he waved and said "I'll see y'all later," but this time neither of them acknowledged him.

As Mr. Neal was walking up the stairs to his residence, he heard what sounded like two growls coming from the truck. Mr. Neal "knew who was making the noise" because [Appellant] and Ms. Butler were still in the truck, his friend had just left, and "[t]here was nobody else on the street." He continued walking up the stairs and went inside to microwave food. As he was waiting for his food to finish cooking, he heard three (3) gunshots. He immediately opened his front door and looked down the street. Mr. Neal then heard [Appellant] say, "see what you made me do. See what you made me do." Mr. Neal watched [Appellant] walk "from the passenger side around to the driver side from behind his truck, get in the truck and casually pull off." Mr. Neal saw [Appellant] holding a firearm as [Appellant] was walking around the truck to get back into the vehicle. Though Mr. Neal could not

see [Appellant] because there were only a few streetlights in that area, he testified that he knew it was [Appellant] who made those statements because [he] was the only person outside, and Mr. Neal recognized him by his voice, stature, body language, and gait. Mr. Neal went inside of his house, finished eating his dinner, then went back outside when police officers arrived. Pittsburgh Police Officer Song, one of the responding officers, testified that he spoke with multiple neighbors who talked about "a black pickup truck that made a distinct noise." While they were still on the scene, Officer Song heard "a very large engine revving" in the vicinity. He testified that the revving sounded like it was coming from Marshall Avenue, which is parallel to Luray Street. He attempted to catch up to the vehicle, but he was unable to locate it. Officers obtained surveillance camera footage of the scene from Corey Covington, one of Ms. Butler's neighbors. Mr. Covington was interviewed by the officers, and he told them that a black truck that had a hole in its exhaust was on the street that night. Officers put out a BOLO for [Appellant]'s vehicle, which was "an early 2000 Chevy Silverado with an extended cab, black in color, and having a Texas license plate." [Appellant]'s truck was located 20 minutes away from the scene of the murder. Surveillance cameras in the area showed that, at approximately noon on July 29, 2018, the day after the murder, a black male legally parked the truck, exited the vehicle, and never returned to it. The truck was subsequently towed, and a search of the vehicle was conducted on July 30, 2018, two days after Ms. Butler's murder. The truck was registered to [Appellant], his DNA was found inside of the vehicle, and envelopes containing [Appellant's] name and address were located inside of the truck bed.

On August 3, 2018, approximately six (6) days after Ms. Butler's murder, [Appellant] appeared at the Renewal Center on Second Avenue around 10:30 p.m., confessed to the murder and tried to turn himself in. According to Renewal employee Ryan Niznik, [Appellant] walked up to the glass outside of the building and told Mr. Niznik, "I have a warrant for my arrest. They said I killed my girlfriend." Mr. Niznik observed that [Appellant] appeared "anxious, nervous" and was sweating. Mr. Niznik told his coworker, Aleila Lewis, to call 911. Aleila Lewis had already seen [Appellant] prior to the time that Mr. Niznik told her to call 911 because she noticed [Appellant] outside while she was in her car waiting for her shift to start. Her attention was drawn to him because he was walking past her on his phone with his voice raised, and he appeared "a little agitated." Her windows were

halfway down, and she heard [Appellant] say, "I just have to do it." [Appellant's] behavior made Ms. Lewis feel uncomfortable, so she waited until he walked past her vehicle and then she ran inside of her building.

As she was telling Mr. Niznik about [Appellant], [Appellant] knocked on the glass, and she said, "that's him" to Mr. Niznik. Mr. Niznik hit the intercom button in her presence and asked [Appellant] what he needed. Ms. Lewis testified that she heard [Appellant] say, "I need to turn myself in. I just killed my girlfriend." Mr. Niznik turned to her and said, "did you guys hear that?" and she replied, "I wish I did not." She told Mr. Niznik to ask him again, and he did. [Appellant] once again stated, "I need to turn myself in. I just killed my girlfriend" and that's when Ms. Lewis dialed 911. Ms. Lewis testified that she "clearly heard the whole conversation."

Ms. Lewis told the 911 dispatcher that there "was a gentleman outside of our building who was trying to turn himself in. He stated that he had just killed his girlfriend." The dispatcher asked Ms. Lewis to describe [Appellant] and whether he had any weapons. While she was on the line with the dispatcher, she had Mr. Niznik ask [Appellant] why he was at Renewal, and [Appellant] said, "there's a warrant out for me. Google me. My name is Calvin Alston. They have been looking for me for five days." The dispatcher then told her that police were on their way. Mr. Niznik tried to direct [Appellant] to Municipal Court. Ms. Lewis testified that she did not ask [Appellant] for any more details because "[o]nce he said I killed my girlfriend, my concern was picking him up and getting him away from my building."

Following trial, a jury found [Appellant] guilty of first-degree murder and [carrying a firearm without a license]. On October 20, 2021, the trial court sentenced [Appellant] to life imprisonment for first-degree murder and a consecutive term of 3 to 6 years' incarceration for [carrying a firearm without a license]. [Appellant] filed a post-sentence motion, which the court denied.

*Commonwealth v. Alston*, 195 WDA 2022, 2023 WL 2858928, at *1-2 (Pa. Super. filed Apr. 10, 2023) (unpublished mem.) (citation omitted).

After Appellant appealed his judgment of sentence, this Court affirmed. *See id.* at \*1. Appellant sought petition for allowance of appeal, which our Supreme Court denied on September 13, 2023. *See Commonwealth v. Alston*, 96 WAL 2023, 304 A.3d 333 (Pa. 2023).

On March 28, 2024, Appellant filed a *pro se* PCRA petition. Suzanne Swan, Esq. (Current PCRA Counsel) was appointed to represent Appellant. Current PCRA Counsel filed an amended PCRA petition on March 24, 2025. On May 28, 2025, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's PCRA petition without a hearing. No response was filed. The PCRA court dismissed Appellant's PCRA petition on June 27, 2025.

On July 24, 2025, Appellant filed a *pro se* notice of appeal.[2] Four days later, Current PCRA Counsel also filed a notice of appeal. On July 30, 2025, the PCRA Court entered an order directing Appellant to file a Rule 1925(b) statement by August 25, 2025. Current PCRA Counsel timely filed a Rule 1925(b) statement.

On August 28, 2025, Appellant filed a *pro se* motion alleging Current PCRA Counsel's ineffective assistance and seeking to proceed *pro se*. *See* Mot. for Withdrawal, 8/28/25. Therein, Appellant claimed that Current PCRA Counsel was ineffective for failing to raise a claim regarding trial counsel's

---

[2] "[W]hen a counseled defendant files a *pro se* notice of appeal, the appeal is not a legal nullity and has legal effect." *Commonwealth v. Hopkins*, 228 A.3d 577, 580-81 (Pa. Super. 2020) (citation omitted).

ineffective assistance for failing to object to the trial court's reasonable doubt instruction in her amended PCRA petition. *See id.*

On appeal, Appellant raises the following issues for our review:

1. Did the [PCRA] court err in denying the PCRA petition without a hearing insofar as [Appellant] set forth a meritorious claim that counsel was ineffective for failing to request that the jury be given a charge pursuant to *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954) with respect to the identification testimony by Harold Neal, Jr.?

2. Did the [PCRA] court err in denying the PCRA petition without a hearing insofar as [Appellant] set forth a meritorious claim that counsel was ineffective for failing to challenge the court's example of circumstantial evidence when giving concluding instructions to the jury?

3. Did the [PCRA] court err in denying the PCRA petition without a hearing insofar as [Appellant] set forth a meritorious claim that counsel was ineffective for failing to object to the Commonwealth's video evidence obtained from witness Corey Covington?

4. Did the [PCRA] court err in denying the PCRA petition without a hearing insofar as [Appellant] set forth a meritorious claim that counsel was ineffective for not objecting to the lower court's example when instructing the jury on reasonable doubt?

Appellant's Brief at 5 (some formatting altered).

Before addressing the merits of Appellant's claims, we must address Appellant's allegations of ineffective assistance against Current PCRA Counsel, which Appellant raised in his motion for withdrawal. *See* Mot. for Withdrawal, 8/28/25.

It is well established that an indigent person is entitled to the appointment of counsel for proceedings on a first PCRA petition. *See*

*Commonwealth v. Albert*, 561 A.2d 736, 738 (Pa. 1989). "In this context, the right to counsel conferred on initial PCRA review means an enforceable right to the effective assistance of counsel." *Commonwealth v. Betts*, 240 A.3d 616, 621 (Pa. Super. 2020) (citations and internal quotation marks omitted). A petitioner's "rule-based right to effective counsel extends throughout the entirety of his first PCRA proceeding." *Id.* at 623.

Once a PCRA petitioner makes timely allegations of ineffective assistance of PCRA counsel, a "substantial and irreconcilable" conflict with counsel is created. *Id.* Once the conflict is created, PCRA counsel is "faced with the impossible choices of: (1) taking no action, or rejecting Appellant's assertions of ineffectiveness, thereby narrowing Appellant's available claims for relief and opposing his client's interests; or (2) confirming Appellant's assertions and assisting Appellant in pursuing them while he still represent[s] Appellant." *Id.* at 623-24. However, counsel is unable to proceed with either option without violating Pennsylvania law. *Id.* at 624.

In *Commonwealth v. Bradley*, our Supreme Court held that "a PCRA petitioner may, after a PCRA court denies relief, and **after obtaining new counsel or acting *pro se***, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (emphasis added).

In *Commonwealth v. Greer*, our Supreme Court addressed a matter in which a PCRA petitioner alleged ineffective assistance of PCRA counsel on appeal, but before PCRA counsel filed an appellate merits brief in this Court.

***Greer***, 316 A.3d at 626. Initially, PCRA counsel raised four issues concerning trial counsel's ineffectiveness. ***Id.*** at 625-26. However, before the appellant's PCRA counsel filed a merits brief, the petitioner sent a letter to PCRA counsel requesting a remand to allow him to challenge PCRA counsel's ineffectiveness. ***Id.*** at 626. PCRA counsel, seemingly recognizing that he was barred from arguing his own ineffective assistance, filed an application for remand with this Court after receiving the letter. ***See id.*** This Court deferred the application to the merits panel and directed counsel to file a brief. ***Id.*** at 627. Counsel filed a merits brief devoid of any issues regarding his own ineffective assistance. ***Id.*** In an unpublished memorandum opinion, this Court remanded the case to the PCRA court to appoint new counsel to develop a record and address any issues the petitioner wished to raise with respect to PCRA counsel. ***Id.***

After this Court issued its memorandum in ***Greer***, the Commonwealth sought reargument before an *en banc* panel of this Court and PCRA counsel once again filed an application for remand seeking the appointment of new counsel to respond to the Commonwealth's reargument petition. ***Id.*** This Court granted PCRA counsel's request for remand and the PCRA court appointed new counsel. ***Id.*** Ultimately, this Court denied reargument and the Commonwealth was granted review with our Supreme Court. ***Id.*** The Commonwealth argued that this Court should have assessed whether the petitioner's allegations of ineffectiveness were "patently meritless before

remanding to the PCRA court for appointment of counsel." ***Id.*** (footnote omitted).

Upon its review, our Supreme Court held that this Court erred by directing counsel to file a merits brief where counsel filed an application for remand after his client alleged ineffective assistance of counsel against him. ***Id.*** at 629-31. In reaching that conclusion, our Supreme Court noted that "when faced with a clear indication that [petitioner] wished to pursue claims of [PCRA counsel's] ineffectiveness, [the Superior Court] should have immediately remanded the case to the PCRA court for an on-the-record assessment of [petitioner's] rights and wishes." ***Id.*** at 628-29. The ***Greer*** Court further stated that, even if an application for remand did not explicitly seek *pro se* status, if the application raised the possibility that petitioner may have preferred to proceed *pro se* to pursue his claims of PCRA counsel's ineffective assistance, this Court should remand for a ***Grazier*** hearing to determine petitioner's wishes. ***Id.*** at 629.

Here, the record indicates that Appellant wished to proceed *pro se* to pursue claims of Current PCRA counsel's ineffectiveness.[3] ***See Greer***, 316 A.3d at 628-29; ***see also*** Mot. for Withdrawal. In his *pro se* motion, Appellant claims that Current PCRA Counsel sent him a draft of the amended PCRA petition for his review in March of 2025. ***See*** Mot. for Withdrawal at 1-2.

---

[3] We note that, critically, Appellant filed his Motion for Withdrawal before Current PCRA Counsel filed a merits brief in this Court. ***See Greer***, 316 A.3d at 629 (stating that a request to proceed *pro se* must be made before counsel has filed a merits brief in order to be timely).

Appellant claims that, when he noticed the draft amended petition did not include a claim regarding trial counsel's failure to object to the trial court's reasonable doubt instruction,[4] he wrote Current PCRA Counsel and told her that "he was not comfortable with the amended PCRA [petition] as it was written and that he would not return the verification form until they'd had a chance to discuss why [Current PCRA Counsel] had omitted the reasonable doubt instruction issue." *Id.* at 2. Appellant claims that he did not receive a response from Current PCRA Counsel and later learned, in May of 2025, that she had filed the amended PCRA petition without the signed verification form.[5] *See id.* Appellant contends that, upon this discovery, he wrote Current PCRA Counsel a second time seeking to supplement the amended PCRA petition with his claim regarding the reasonable doubt instruction, but he did not receive a

---

[4] This claim was included in Appellant's pro se PCRA petition and in the Rule 1925(b) statement filed by Current PCRA Counsel. **See** *Pro Se* PCRA Petition, 3/28/24, at 2; Rule 1925(b) Statement, 8/25/25, at 5. Since an amended PCRA petition supersedes a *pro se* PCRA petition, were we to address this claim at this point it would be waived because Current PCRA Counsel failed to include it in the amended petition. **See Commonwealth v. Vargo**, 1142 WDA 2024, 2025 WL 3267887, at *4 n.6 (Pa. Super. filed Nov. 24, 2025) (unpublished mem.); **see also** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

[5] The record reflects that a verification form was not included with Current PCRA Counsel's amended PCRA petition. **See** Amended Petition, 3/24/25; **see also** Pa.R.Crim.P. 902(a)(14)(stating that a PCRA petition "shall contain substantially . . . a verification by the defendant that," among other things, "the attorney filing the petition is authorized by the defendant to file the petition on the defendant's behalf").

response from Current PCRA Counsel. *See id.* Appellant asserts that he next received the PCRA court's dismissal order directly from the PCRA court.[6] *See id.* Appellant claims that he did not speak to Current PCRA Counsel until after he filed his *pro se* notice of appeal. *See id.* at 3. At that point, Appellant claims he notified Current PCRA Counsel of his desire to proceed *pro se*. *See id.* Appellant contends that Current PCRA Counsel's "performance . . . fell way below the line of constitutionally acceptable representation" because she filed the amended PCRA petition without his approval, failed to explain why she did not include the reasonable doubt issue in the amended petition, failed to keep him informed about the PCRA proceedings, and failed to answer his requests for information about his case. *See id.* at 3-4. Accordingly,

_____

[6] We note that the record does not reflect service of the PCRA court's Rule 907 on Appellant; rather it appears that the PCRA court's Rule 907 response was only served on Current PCRA Counsel and the Commonwealth. *See* Rule 907 Notice, 5/28/25, at 6.; *see also Commonwealth v. Williams*, 217 EDA 2021, 2022 WL 1026702, at *3-4 (Pa. Super. filed Apr. 6, 2022) (unpublished mem.) (finding error where the PCRA court's 907 notice was served on PCRA counsel and the Commonwealth but not the defendant because "[b]y not serving [the defendant] with a copy with the Rule 907 notice, the PCRA court deprived [defendant] of the opportunity to file a response about his PCRA counsel's representation, correct any of his existing claims, or seek leave of court to file an amended PCRA petition"). Because Appellant was not served with the PCRA court's Rule 907 notice and because Current PCRA Counsel was not granted leave to withdraw, we find this Court's recent opinion in *Commonwealth v. Mitchell* inapplicable. *See Mitchell*, --- A.3d ---, 2026 WL 775371, at *2-3 (Pa. Super. 2026) (finding that a PCRA petitioner waived claims of PCRA counsel ineffective assistance waived where counsel was granted leave to withdraw in the PCRA court's 907 notice and failed to respond with his allegations of ineffective assistance).

Appellant requests that Current PCRA Counsel be removed from his case and that he be allowed to proceed *pro se*. ***See id.*** at 4.

Because we are faced with a clear indication that Appellant wished to pursue claims of Current PCRA counsel's ineffectiveness, we are constrained to remand this case for an on-the-record assessment of Appellant's rights and intentions with respect to his appeal. ***See Greer***, 316 A.3d at 628-29. After Appellant indicated that he wanted to raise ineffectiveness claims against Current PCRA Counsel, it placed Current PCRA Counsel in a position where she was required to choose between ignoring the claims of ineffective assistance against her and continuing to litigate the appeal or asserting her own ineffective assistance. ***See id.*** at 623-24. Neither option is permissible under Pennsylvania law. ***See Betts***, 240 A.3d at 624. When faced with this situation, Current PCRA Counsel's permissible action was to seek a remand with this Court for the PCRA court to determine Appellant's intentions with respect to his appeal.[7] ***See Greer***, 316 A.3d at 629. Nonetheless, Current PCRA Counsel failed to seek a remand and, instead, filed a merits brief with this Court.[8]

Accordingly, pursuant to ***Greer***, we must remand the case to the PCRA court for a ***Grazier*** hearing to determine Appellant's intentions and rights on

_____

[7] We do not believe that Current PCRA Counsel's failure to seek remand in this Court distinguishes this case from ***Greer***.

[8] We note that "only after clarifying [Appellant's] representation status can a proper merits brief be filed." ***Greer***, 316 A.3d at 629.

appeal. *See Greer*, 316 A.3d at 628-29. At the hearing, the PCRA court shall advise Appellant that he has three potential options: 1) continue to litigate his appeal with Current PCRA Counsel representing him on appeal; 2) proceed on appeal with newly appointed counsel; or 3) proceed *pro se* on appeal. The PCRA court shall address the ramifications of each avenue with Appellant.

Specifically, if Appellant wishes to proceed with Current PCRA Counsel, he shall be advised that she cannot litigate claims of her own ineffective assistance on appeal and, therefore, Appellant will waive review of those claims. If Appellant wishes to proceed with new PCRA counsel, the PCRA court shall appoint new PCRA counsel for Appellant, and Appellant shall be advised that new counsel, after reviewing Appellant's claims of Current PCRA Counsel's ineffective assistance, may decline to raise them based upon new counsel's professional judgment.[9] If Appellant wishes to proceed *pro se*, the PCRA court shall ensure that Appellant is aware of all of the relevant information required by Pa.R.Crim.P. 121(a)(2) and *Grazier*.

Finally, should Appellant decide to proceed with Current PCRA Counsel, the PCRA court shall reinstate its order denying Appellant's PCRA petition and Current PCRA Counsel shall continue to represent Appellant on appeal. However, should Appellant decide to proceed *pro se* or with new PCRA counsel,

---

[9] We take no position on the merits of Appellant's claims and note that "[an a]ppellant's entitlement to effective assistance [of counsel during the litigation of his first PCRA] is not predicated upon the existence of meritorious issues." *See Betts*, 240 A.3d at 624 n.13.

Appellant shall be provided with the opportunity to amend his PCRA petition, limited to the claims of PCRA Counsel's ineffective assistance. The PCRA court shall review those claims, as presented by new PCRA counsel or by Appellant *pro se*, and decide those claims on the merits. If the PCRA court denies those claims, Appellant is entitled to appeal his claims of Current PCRA Counsel's ineffective assistance as well as any other claims previously presented to the PCRA court and preserved for our review.[10]

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/13/2026

---

[10] When complying with Rule 1925(a), the PCRA court may rely on its previous 1925(a) opinion to the extent it addresses the issues that Appellant has already raised for our review.